UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-CV-81750-MARRA

JAMES E. SCOTT,

      Plaintiff, *pro se,*

vs.

INTERNAL REVENUE SERVICE,

      Defendant.

_____/

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon the Internal Revenue Service's Motion for Summary Judgment [DE 27] and Plaintiff's Cross-Motion for Summary Judgment [DE 36]. The Court has carefully considered the written submissions, the record, applicable law, and is otherwise fully advised in the premises.

Defendant, the Internal Revenue Service ("IRS"), moves for summary judgment asserting it is entitled to judgment as a matter of law that it has (1) performed an adequate search for records responsive to Plaintiff's Freedom of Information Act ("FOIA") request; and (2) properly withheld records, or portions thereof, under the FOIA exemptions provided in 5 U.S.C. § 552(b).

*Pro se* Plaintiff, James E. Scott ("Scott"), moves for summary judgment on the grounds that the IRS has (1) failed to carry its burden to show that each record withheld from disclosure is within the applicable statutory description, and (2) failed to carry its burden with respect to the claims of Exemption 5 that "an agency shall withhold information under this section only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection

b" of 5 U.S.C. § 552(a)(8)(A)(i)(I).  Scott's Motion to Compel Preparation of a Vaughn

Index (DE 28) was denied, the Court finding that the tables contained at pages 7-12 of

the Keaton Declaration to be the functional equivalent of a Vaughn Index.  DE 35 at 5.

Nonetheless, the Court ordered the documents withheld in part, and in full to be filed

under seal for an *in camera* review.  *See* DE 40; DE 41 (under seal).

## Undisputed Material Facts

1. On May 22, 2018, the IRS received a request under the Freedom of Information Act

from Scott.  Declaration of David Nimmo, hereinafter "Nimmo Decl." ¶ 6.

2. Scott's FOIA Request sought "certain records within the Office of Chief Counsel,"

including, "any outgoing letter, email, or record of other communication, originated

by any of Timothy L. Jones, Helen M. Hubbard, or Lewis Bell regarding any Private

Letter Ruling request, between 8/1/2013 and 05/21/2014."  DE 1 at 6, Ex.1; Nimmo

Decl. ¶ 8.

3. Scott's FOIA Request was assigned tracking number F18142-0070.  Nimmo Decl. ¶ 6.

4. On May 22, 2018, the FOIA request was assigned to Tax Law Specialist John

Quigley within the IRS's Office of Government Liaison, Disclosure & Safeguards.

Nimmo Decl. ¶ 7.

5. On May 22, 2018, Mr. Quigley used the IRS's internal personnel directory to search

for each of the three individuals — Timothy L. Jones, Helen M. Hubbard, and Lewis

Bell — who were identified in Scott's Request.  Nimmo Decl. ¶¶ 8, 9.

6. Mr. Quigley's search confirmed that all three individuals were attorneys in the

Office of Chief Counsel's National Office ("National Office") in Washington, D.C.

Nimmo Decl. ¶ 9.

7. On May 23, 2018, Mr. Quigley sent a search memorandum requesting responsive records to the Disclosure and Litigation Support ("DLS") branch within the Office of Chief Counsel.  Nimmo Decl. ¶ 10.

8. DLS is responsible for coordinating and processing all FOIA requests that seek records contained in the National Office.  Nimmo Decl. ¶ 10.

9. Because plaintiff's request sought "records within the Office of Chief Counsel" and identified attorneys within the National Office, DLS was the appropriate office to conduct the search for responsive records.  Nimmo Decl. ¶ 10.

10. On May 30, 2018, Mr. Quigley received an initial response from Melva Tyler, who was a Supervisory Legal Administrative Specialist and the Branch Chief of DLS at the time. Nimmo Decl. ¶ 11.  Ms. Tyler explained that DLS needed a specific Private Letter Ruling ("PLR") number,[1] subject matter, or Uniform Issue List ("UIL") code in order to conduct a search for responsive records.  Nimmo Decl. ¶ 11.

11. Mr. Quigley accordingly reached out to Scott and explained that he needed additional information in order to search for the records sought in the FOIA Request. Nimmo Decl. ¶¶ 12-13.

12. On June 19, 2018, Scott emailed Mr. Quigley a list of eight written determination[2] numbers that he had identified as PLRs to search: 201334038, 201411032, 201424002,

---

1 PLRs are taxpayer-specific written determinations issued in response to the taxpayer's inquiry about its tax status or the tax effects of its acts or transactions. *See* Rev. Proc. 2020-1, § 2.01.  The PLR process begins with a request from a taxpayer for a letter ruling.  *Id.* § 7.01. The case numbers for all PLRs begin with the prefix "PLR-". These case numbers are different from the written determination numbers assigned to each PLR upon publication.  Nimmo Decl. ¶ 11 n.5; Keaton Decl. ¶ 12 n.4.

2 Written determinations are documents the IRS is required to make available to the public pursuant to the provisions of § 6110 of the Internal Revenue Code.  *See* 26 U.S.C. § 6110.  In general, there are three types of written determinations: (1) taxpayer-specific rulings, which include PLRs; (2) technical advice memoranda; and (3) Chief Counsel Advice.  Each written determination is assigned a unique nine-digit number upon publication, which is publicly listed on IRS.gov.  Hawkins Decl. ¶ 6 n.1.

201431003, 201435013, 201442049, 201445002, and 201502008.  Nimmo Decl. ¶ 14.

13. On June 21, 2018, Mr. Quigley sent a revised search memorandum to DLS listing the eight written determination numbers Scott had provided. (Nimmo Decl. ¶ 16.)

14. Ms. Tyler instructed a legal secretary to retrieve the files associated with the eight written determination letters Scott identified.  Declaration of Richelle Hawkins, hereinafter "Hawkins Decl." ¶ 7.

15. It was Ms. Tyler's routine procedure to instruct a legal secretary to retrieve written determination files for the paralegal specialist who was assigned to process a FOIA request seeking records related to specific written determination numbers. Hawkins Decl. ¶ 7.

16. In order to locate the files associated with the written determination numbers Scott identified, the legal secretary searched the Office of Chief Counsel's case management information system ("CASE-MIS").  Hawkins Decl. ¶ 8.

17. CASE-MIS and its subsystems are electronic case management systems that are used, for among other purposes, to track cases within the Office of Chief Counsel (*see* Chief Counsel Directives Manual ("CCDM") 30.7.1).  Hawkins Decl. ¶ 8.

18. Within CASE-MIS, the legal secretary searched for each of the eight written determination numbers Scott identified.  Hawkins Decl. ¶ 9.

19. CASE-MIS indicated that each of the files associated with the eight written determinations were closed.  Hawkins Decl. ¶ 9.

20. Records maintained in closed legal files are generally stored in the Docket, Records and User Fee ("DRU") branch within the Office of Chief Counsel.  Hawkins Decl. ¶ 10.

21. The DRU is also the branch within the Office of Chief Counsel specifically responsible for storing PLR legal files.  Hawkins Decl. ¶ 10.

22. Therefore, the DRU branch was the appropriate and customary location to search for files associated with the eight written determination numbers that Scott had identified as PLRs.  Hawkins Decl. ¶ 10.

23. Accordingly, the legal secretary retrieved the files associated with the eight written determination numbers that Scott had identified from the DRU branch. Hawkins Decl. ¶ 11.

24. On June 27, 2018, Richelle Hawkins, a Paralegal Specialist in DLS was assigned to the FOIA request.  Hawkins Decl. ¶ 4.  Ms. Hawkins was provided with Mr. Quigley's revised search memorandum.  Hawkins Decl. ¶ 4.

25. On that same day, the legal secretary provided Ms. Hawkins with the files that had been retrieved from the DRU branch.  Hawkins Decl. ¶ 12.

26. Upon Ms. Hawkins initial review of the files from the DRU branch, she discovered that three of the written determination numbers that Scott had identified – 201334038, 201411032, and 201442049 – were not associated with PLRs.  Hawkins Decl. ¶ 14.

27. Scott agreed to remove the three written determination numbers not associated with PLRs from his request, thereby limiting the scope of his request to five written determination numbers all of which were associated with PLR files: 201424002, 201431003, 201435013, 201445002, and 201502008.  Nimmo Decl. ¶ 19; Hawkins Decl. ¶ 15.

28. In order to review the records contained in the PLR files, Ms. Hawkins first digitized the records by scanning them.[3]  Hawkins Decl. ¶ 16.

29. For each of the PLR files, Ms. Hawkins created a single PDF containing all of the records in that PLR file.  Hawkins Decl. ¶ 16.

30. This digitization process preserved the PLR files in their original hardcopy format and allowed Ms. Hawkins to review the records electronically.  Hawkins Decl. ¶ 16.

31. Ms. Hawkins next reviewed each of the PLR files to separate the records into two categories: (1) records subject to the disclosure requirements of 26 U.S.C. § 6110, and (2) records subject to the disclosure requirements of the FOIA.  Hawkins Decl. ¶ 17.

32. This step was necessary because written determination files, including PLR files, generally contain records subject to these two separate disclosure regimes, § 6110 and the FOIA.[4]  Hawkins Decl. ¶ 17.

33. For each of the PLR files, Ms. Hawkins separated the final written determination and "background file documents" from the other records in each file.  Hawkins Decl. ¶ 20.

34. This process resulted in a total of 255 pages of material that was both subject to disclosure under the FOIA and potentially responsive to Scott's request.  Hawkins

---

3  This process was not necessary for the PLR file associated with written determination number 201502008 because another DLS employee, Deanna Poole, had already digitized those records in connection with another matter. Once a file has been requested pursuant to either § 6110 or the FOIA, DLS generally maintains a digitized "shelf copy" (in addition to the original hardcopy file stored in the DRU) in order to prevent the need to re-digitize the records every time the file is requested.  Hawkins Decl. ¶ 16 n.3.

4  Section 6110 governs the disclosure of final written determinations and "background file documents." "Background file documents" include the request for a written determination, any written material submitted in support of the request, and any pre-issuance communications between the IRS and non-IRS parties in connection with the written determination.  *See* 26 U.S.C. § 6110(b). Because final written determinations and "background file documents" are subject exclusively to the disclosure requirements of § 6110, they are not subject the FOIA.  *See id.* § 6110(m).  Hawkins Decl. ¶ 18.

Decl. ¶ 20.

35. On midnight of December 21, 2018, the continuing resolution that had provided funding to the federal government expired and appropriations to federal agencies, including the IRS, lapsed.  During the lapse in appropriations, government employees were prohibited from working, even on a voluntary basis, except in limited circumstances.  *See* 31 U.S.C. § 1342.  Nimmo Decl. ¶ 21.

36. Accordingly, Ms. Hawkins and Mr. Quigley were prohibited from working any further on Scott's FOIA request.  Nimmo Decl. ¶ 21; Hawkins Decl. ¶ 21.

37. On January 25, 2019, a continuing resolution was entered and the federal government was reopened.  Nimmo Decl. ¶ 22.

38. Both Ms. Hawkins and Mr. Quigley were informed once the government reopened that Scott had commenced this litigation during the shutdown.  Nimmo Decl. ¶ 23; Hawkins Decl. ¶ 22.

39. Once litigation related to a FOIA request is filed in district court, the Disclosure Office transfers the case to the Office of Chief Counsel to assist the Department of Justice in its defense of the litigation.  Nimmo Decl. ¶ 24.

40. In accordance with these procedures, both Ms. Hawkins and Mr. Quigley stopped working on the FOIA Request; provided copies of their case notes, correspondences, and potentially responsive records to the Office of Chief Counsel; and closed the case on AFOIA.[5]  Nimmo Decl. ¶ 24; Hawkins Decl. ¶¶ 22-23.

---

5  AFOIA is a computer-based inventory control and case management system.  It is used by the IRS to process and track all requests nationwide for agency records made pursuant to the FOIA and Privacy Act.  Nimmo Decl. n.2.

41. Andrew Keaton, an attorney assigned to Branch 6 of the Office of the Associate Chief Counsel (Procedure and Administration) was assigned to the case on February 6, 2019.  Third Declaration of Andrew Keaton, hereinafter "Keaton Decl." DE 27-5, ¶ 6.

42. Once Mr. Keaton received copies of the collected materials from Ms. Hawkins, he conducted a preliminary review of those records.  Keaton Decl. ¶¶ 9-10.

43. Because PLR files do not necessarily contain all communications pertaining to the PLR from all employees, Mr. Keaton reasoned that additional records of communications may exist outside of the PLR.  Keaton Decl. ¶ 11.

44. Accordingly, Mr. Keaton determined that a supplemental search was necessary. Keaton Decl. ¶ 11.

45. On June 21, 2019, Mr. Keaton emailed Timothy Jones and Lewis Bell, attorneys in the Office of the Associate Chief Counsel (Financial Institutions & Products), regarding Scott's request.  Keaton Decl. ¶ 12.

46. Mr. Keaton provided Mr. Jones and Mr. Bell with the following information for each of the five PLRs at issue in this litigation: the written determination number, the case number, and the requester name.  Keaton Decl. ¶ 12.

47. On June 25, 2019, Mr. Keaton spoke with Mr. Jones and Mr. Bell and instructed them to search all of their files, both paper and electronic, for any records of communications that may be potentially responsive to Scott's request.  Keaton Decl. ¶ 13.

48. With regards to email communications, Mr. Keaton specifically instructed Mr. Jones and Mr. Bell to search their Microsoft Outlook email accounts for all potentially responsive emails.  Keaton Decl. ¶ 13.

49. For each of the five PLRs at issue, Mr. Keaton instructed Mr. Jones and Mr. Bell to conduct searches using the written determination number, the case number, and the requester name.  Keaton Decl. ¶ 13.

50. Mr. Jones and Mr. Bell agreed to provide any potentially responsive records directly to Mr. Keaton.  Keaton Decl. ¶ 13.

51. On July 2, 2019, Mr. Jones provided Mr. Keaton with copies of all of the potentially responsive records that he had located.  Keaton Decl. ¶ 14.

52. Mr. Jones confirmed that did not have any potentially responsive records related to two of the five PLRs identified by Scott.  Keaton Decl. ¶ 14.

53. On July 8, 2019, Mr. Bell provided Mr. Keaton with copies of all of the potentially responsive records that he had located.  Keaton Decl. ¶ 15.

54. Mr. Bell confirmed that he did not have any potentially responsive records related to three of the five PLRs identified by Scott.  Keaton Decl. ¶ 15.

55. On July 26, 2019, Mr. Keaton emailed Helen Hubbard, the Associate Chief Counsel (Financial Institutions & Products), regarding Scott's request.  Keaton Decl. ¶ 16.

56. As he had with Mr. Jones and Mr. Bell, Mr. Keaton provided Ms. Hubbard with the written determination number, the case number, and the requester name for each of the five PLRs at issue.  Keaton Decl. ¶ 16.

57. Mr. Keaton requested that Ms. Hubbard search all of her files, both paper and electronic, for any records potentially responsive to Scott's request.  Keaton Decl. ¶ 16.

58. On August 19, 2019, Ms. Hubbard confirmed that she conducted the requested searches of her files, including her Microsoft Outlook email account, and located no

records responsive to Scott's FOIA request.  Keaton Decl. ¶ 17.

59. Mr. Keaton states in his declaration that he is not aware of any other custodian or location likely to maintain records responsive to Scott's FOIA request.  Keaton Decl. ¶ 18.[6]

60. Mr. Keaton states in his Declaration that upon review of all the potentially responsive records collected by the IRS (including those previously collected by DLS), only 104 pages were in fact responsive to Scott's FOIA request.  Keaton Decl. ¶ 19.

61. Mr. Keaton directed the trial attorney assigned to this FOIA action to release to Scott the pages responsive to his FOIA request.  Of these records, one page was released in full, 12 pages were released in part, and 91 pages were withheld in full. Keaton Decl. ¶ 20.

62. The IRS released the records to Scott on or about September 12, 2019.  Keaton Decl. ¶ 22.

63. The pages that the IRS withheld in part or in full were withheld based on the following FOIA exemptions:  Exemption 3 in conjunction with I.R.C. § 6103(a); Exemption 5 in conjunction with the deliberative process privilege; and Exemption 6. Keaton Decl. ¶ 25.

---

6  Scott argues that because Ms. Hawkins does not state in her declaration that "she is not aware of any other custodian or location likely to maintain records responsive to the request," it demonstrates that the search was in some way insufficient. DE 36 at 13.  Scott filed the current FOIA action before Ms. Hawkins could complete her request for responsive records. Hawkins Decl. ¶ 22, DE 27-4. Once Scott filed the current action, Ms. Hawkins was required to cease work on Scott's FOIA request. *Id.* The FOIA request was then transferred to Mr. Keaton, who completed the search for responsive records. *Id.; see also* Keaton Decl. ¶¶ 6, 9, DE 27-5. Because Ms. Hawkins was not the one to complete the search for responsive records, she could not accurately testify under penalty of perjury that she was unaware of any other custodian or location likely to maintain records. Mr. Keaton, who was ultimately the one to complete the search, did state in his declaration, that he was not aware of any other custodian or location likely to maintain records. Keaton Decl. ¶ 18.

64. The IRS claims it has withheld in their entirety only those records that fall within a FOIA exemption, or those records wherein the portions exempt from disclosure under the FOIA are so inextricably intertwined with nonexempt material as to be non-segregable.  Keaton Decl. ¶ 26.

FOIA Exemption 3 in Connection with 26 U.S.C. § 6103(a)

65. The IRS withheld eight pages in part and 34 pages[7] in full under FOIA Exemption 3 in connection with 26 U.S.C. § 6103(a).  Keaton Decl. ¶ 28; DE 41.

66. Mr. Keaton states in his Declaration that the information withheld under FOIA Exemption 3 in connection with 26 U.S.C. § 6103(a) includes taxpayer-specific information, including identifying information, which was received by, recorded by, prepared by, furnished to, or collected by the IRS with respect to the determination of the existence or possible existence of a tax liability.  Keaton Dec. ¶ 28.

67. Mr. Keaton states in his Declaration that the withheld information is part of a written determination or background file document that is not open to the public under 26 U.S.C. § 6110.  Keaton Decl. ¶ 28.

68. Mr. Keaton states that no provision of the Internal Revenue Code authorizes the release of the third-party return information described in the table below.  Keaton Decl. ¶ 28.

69. The following pages have been withheld in part under FOIA Exemption 3 in connection with 26 U.S.C. § 6103(a):

---

7  The IRS's response erroneously states it withheld 91 pages in full under FOIA Exemption 3 in connection with § 6103(a).  DE 38 at 14 of 29.  Scott repeats this assertion in his response.  DE 39 at 6. In fact, the IRS withheld a total of 91 pages in full under all the exemptions claimed, not just Exemption 3.  Keaton Declaration, ¶ 20.

| Page(s) | Document Description | Rationale |
|---|---|---|
| 65-66 | Form 9719, *Case History*, with entries dated 11/21/13 – 05/21/16. | The withheld material consists of the name and other identifying return information of a third-party taxpayer. |
| 72-73 | Emails dated 08/05/13 – 10/21/13 among Office of Chief Counsel attorneys regarding a Bond Buyer article. | The withheld material consists of the name of a third-party taxpayer. |
| 74-75 | Emails dated 09/17/13 – 09/18/13 between an Office of Chief Counsel attorney and a third-party taxpayer representative regarding a pre-submission conference; email dated 09/19/13 among Office of Chief Counsel attorneys regarding a pre-submission conference. | The withheld material consists of the name and contact information of a third-party taxpayer representative and the names and other identifying information of third-party taxpayers. |
| 76 | Email dated 05/07/14 transmitting the first draft of a PLR for review with drafting attorney's handwritten notes. | The withheld material consists of the name of a third-party taxpayer. |
| 86 | Emails dated 05/07/14 – 05/08/14 transmitting a draft PLR with drafting attorney's handwritten notes. | The withheld material consists of the name of a third-party taxpayer. |

70. The pages in the table below have been withheld <u>in full</u> pursuant to FOIA

Exemption 3 in conjunction with I.R.C. § 6103(a): [8]

| Page(s) | Document Description | Rationale |
|---|---|---|
| 1-2 | Email dated 10/17/13 from an Office of Chief Counsel attorney to an internal email list regarding a PLR; email dated 10/13/13 from a third-party taxpayer representative to an Office of Chief Counsel attorney. | The withheld material consists of the name and contact information of a third-party taxpayer representative and the name and other return information of a third-party taxpayer. |
| 3-12 | Attachment to email dated 10/13/13 from a third-party taxpayer representative to an Office of Chief Counsel attorney. | The withheld material consists of the name and contact information of a third-party taxpayer representative and the name and other return information of a third-party taxpayer. |
| 13 | Emails dated 05/02/14 between Office of Chief Counsel attorneys regarding the drafting of a PLR. | The withheld material consists of the name and other return information of a third party taxpayer. |

---

[8]  The IRS is also withholding in part pages 1, 13, and 14 under FOIA Exemption 5 in connection with the deliberative process privilege.  *See infra.*

| 14 | Emails dated 03/11/14 – 03/12/14 between Office of Chief Counsel attorneys regarding specific issues related to a PLR. | The withheld material consists of the name of a third-party taxpayer representative and the name and other return information of a third-party taxpayer. |
|---|---|---|
| 15 | Emails dated 03/13/14 between Office of Chief Counsel attorneys transmitting drafts of a PLR. | The withheld material consists of the name and other return information of a third-party taxpayer. |
| 24 | Email dated 05/14/14 between Office of Chief Counsel attorneys transmitting a draft of a PLR. | The withheld material consists of the return information of a third-party taxpayer. |
| 33 | Email dated 05/20/14 between Office of Chief Counsel attorneys transmitting a draft of a PLR. | The withheld material consists of the name and other return information of a third party taxpayer. |
| 34-41 | Copy of a draft PLR with handwritten notes. | The withheld material consists of the name of a third-party taxpayer representative and the name and other return information of a third-party taxpayer. |
| 42 | Email dated 05/21/14 between Office of Chief Counsel attorneys transmitting a draft of a PLR. | The withheld material consists of the return information of a third-party taxpayer. |
| 51 | Email dated 05/21/14 between Office of Chief Counsel attorneys transmitting a draft of a PLR. | The withheld material consists of the return information of a third-party taxpayer. |
| 59-60 | Form 9719, *Case History*, for a PLR. | The withheld material consists of the name and other return information of a third-party taxpayer. |
| 61 | Emails dated 05/20/14 between Office of Chief Counsel attorneys and a third-party taxpayer representative. | The withheld material consists of the name and contact information of a third-party taxpayer representative. |
| 62-63 | Emails dated 03/21/14 between Office of Chief Counsel attorneys and a third-party taxpayer representative. | The withheld material consists of the name and contact information of a third-party taxpayer representative and the name and other return information of a third-party taxpayer. |
| 64 | Emails dated 11/04/13 – 11/18/13 between Office of Chief Counsel attorneys and a third party taxpayer representative. | The withheld material consists of the name and contact information of a third party taxpayer representative. |
| 67 | Drafting attorney's handwritten notes regarding PLR dated 03/18/14 – 03/23/14. | The withheld material consists of the name and other return information of a third-party taxpayer. |

Keaton Decl. ¶ 28.

FOIA Exemption 5 in Connection with the Deliberative Process Privilege

71. The IRS is withholding 10 pages in part and 57 pages in full under FOIA Exemption 5 in connection with the deliberative process privilege. *See* DE 41 (under seal).

72. Mr. Keaton states in his Declaration that the records being withheld under FOIA Exemption 5 in connection with the deliberative process privilege reflect the deliberations of IRS employees and Office of Chief Counsel attorneys regarding the processing, drafting, and issuance of PLRs. Keaton Decl. ¶ 3 at p. 9.

73. Mr. Keaton states in his Declaration that the withheld records were drafted, written, or compiled by IRS employees or Office of Chief Counsel attorneys primarily for intra-agency use by the IRS. Keaton Decl. ¶ 4 at p. 9.9

74. Mr. Keaton states in his Declaration that the release of the withheld records listed in the tables below would cause foreseeable harm in that it would result in disclosing the IRS's pre-decisional selections of groups of facts, reasons, and rationales that were not the ultimate ground for agency action. Further, Keaton declares, the release of the withheld records would threaten to weaken the quality of internal, predecisional deliberations in the future if there were the expectation that such deliberations would be disclosed. Keaton Decl. ¶ 5 at p. 10.

75. Mr. Keaton maintains that the withheld records are deliberative because they discuss or propose options for reaching the proper legal determination with respect to the PLR, or provide suggested revisions, legal analysis, and other comments on the language of draft versions of the PLR and various other intra-agency communications

---

9   Keaton's Declaration creates some confusion in that the IRS refers to paragraph numbers that do not exist in the document. DE 27-5. The first seven pages include paragraph numbers 1-28, and then on page nine, his Declaration continues with paragraph number two (which should have been labeled paragraph number 29). The remainder of the Declaration refer to paragraph numbers 2-7.

involved in the PLR decision-making process.  Keaton Decl. ¶ 6 at p. 10.

76. Mr. Keaton states in his Declaration that the information contained in the

withheld records is pre-decisional because it reflects opinions and recommendations

of agency personnel that preceded the final issuance of the PLRs.  Keaton Decl. ¶ 6 at

p. 10.

77. The following pages have been withheld *in part* under FOIA Exemption 5 in

connection with the deliberative process privilege:

| Page(s) | Document Description | Rationale |
|---|---|---|
| 1 | Email dated 10/17/13 from an Office of Chief Counsel attorney to an internal email list regarding a PLR. | The withheld material reflects an Office of Chief Counsel attorney's question regarding proposed actions related to a PLR. |
| 13 | Emails dated 05/02/14 between Office of Chief Counsel attorneys regarding the drafting of a PLR. | The withheld material reflects an Office of Chief Counsel attorney's proposed actions, mental impressions, analysis, and recommendations regarding issues related to a PLR. |
| 14 | Emails dated 03/11/14 – 03/12/14 between Office of Chief Counsel attorneys regarding specific issues related to a PLR. | The withheld material reflects an Office of Chief Counsel attorney's proposed actions, mental impressions, analysis, and recommendations regarding issues related to a PLR. |
| 65-66 | Form 9719, *Case History*, with entries dated 11/21/13 – 05/21/16. | The withheld material reflects the drafting attorney's proposed actions, analysis, and recommendations with respect to a PLR. |
| 68-69 | Emails dated 12/12/13 and 12/13/13 between Office of Chief Counsel attorneys regarding the TEB Examination Program. | The withheld information reflects Office of Chief Counsel attorneys' mental impressions, analysis, opinions, and recommendations regarding issues related to a PLR. |
| 72-73 | Emails dated 08/05/13 – 10/21/13 among Office of Chief Counsel attorneys regarding a Bond Buyer article. | The withheld material reflects proposed actions, analysis, and recommendations regarding issues related to a PLR. |
| 74 | Email dated 09/19/13 among Office of Chief Counsel attorneys regarding a pre-submission conference. | The withheld material reflects an Office of Chief Counsel attorney's proposed actions, mental impressions, analysis, and recommendations regarding issues related to a PLR. |

Keaton Decl. ¶ 6 at p. 10-11.

78. The following pages have been withheld *in full* under FOIA Exemption 5 in

connection with the deliberative process privilege:

| Page(s) | Document Description | Rationale |
|---|---|---|
| 16-23; 25-32; 43-50; 52-58 | Undated drafts of a PLR with tracked changes. | These are predecisional draft documents. These unsigned drafts were part of the decision-making process that preceded the final issues of a PLR. In addition, the withheld material consists of the name and other return information of a third-party taxpayer. |
| 77-85 | Draft PLR dated 05/07/14. | This is a predecisional draft document. This unsigned draft was part of the decision-making process that preceded the final issues of a PLR. In addition, the withheld material consists of the name and other return information of a third-party taxpayer. |
| 87-95; 97-104 | Undated draft PLR with tracked changes and reviewer's comments. | This is a predecisional draft document. The comments contained within the draft reflect proposed actions, mental impressions, analysis, opinions, advice, and recommendations with respect to a PLR. This unsigned draft was part of the decision-making process that preceded the final issuance of a PLR. In addition, the withheld material consists of the name and other return information of a third-party taxpayer. |

Keaton Decl. ¶ 6 at p. 11; DE 41 (under seal).

FOIA Exemption 6[10]

79. The IRS is withholding four pages in part under FOIA Exemption 6.

Keaton Decl. ¶ 7 at p. 11.

80. The following pages have been withheld in part under FOIA Exemption 6:

| Page(s) | Document Description | Rationale |
|---|---|---|
| 68-69 | Emails dated 12/12/13 and 12/13/13 between Office of Chief Counsel attorneys regarding the TEB Examination Program. | The withheld information consists of personal, private health and family matters of employees. |
| 70-71 | Email dated 10/24/13 containing conference call information. | The withheld information consists of internal conference line dial-in numbers and access codes. |

Keaton Decl. ¶ 7 at p. 12.

---

[10] Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

81. Mr. Keaton states in his Declaration that the withheld records contain personal information about individuals other than Scott.  Keaton Decl. ¶ 7 at p. 12.

82. Scott "does not challenge the claim of Exemption 6 with respect to the redactions on pages 68 through 71 . . . assuming that the material redacted is as characterized." DE 36 at 13 of 36.

<u>Scott's Two Cases Pending Before the Court</u>

83. On June 5, 2020, an IRS trial attorney wrote to Scott:

> In your Sur-Reply in Case No. 18-81742 and Cross-Motion for Summary Judgment in Case No. 18-81750, you identified a record that had been released in more full (sic) in response to [deleted] request under 26 U.S.C. § 6110.  Because you have demonstrated an authorized disclosure that exactly matches some of the records at issue in the FOIA proceedings, the Service has authorized me to re-release three pages in part in both pending FOIA actions.  The pages in the attached PDF file correspond with the following pages originally released in the two FOIA proceedings as follows: . . .

DE 39-1.

84.    Of the 104 pages responsive to Scott's FOIA request, 40 pages are also responsive in a parallel FOIA action between Scott and the IRS, *Scott v. IRS*, 18-CV-81742-KAM (S.D. Fla).  Keaton Decl. ¶ 23.

**The FOIA and Summary Judgment Generally**

"The purpose of FOIA is to encourage public disclosure of information so citizens may understand what their government is doing." *Office of Capital Collateral Counsel, N. Region of Fla. ex rel. Mordenti v. U.S. Dep't of Justice*, 331 F.3d 799, 802 (11th Cir. 2003) ("*Capital Collateral Counsel*").  "Congress enacted FOIA to 'enable the public to have access to government information that is unnecessarily shielded from public view.'" *Miccosukee Tribe of Indians of Fla. v. U.S.*, 516 F.3d 1235, 1244 (11th Cir. 2008) ("*Miccosukee Tribe*") (quoting *Nadler v. U.S. Dep't of Justice*, 955 F.2d

1479, 1484 (11th Cir. 1992)).  Accordingly, "the records at issue . . . are presumed to be subject to disclosure unless" the IRS "affirmatively establishes that the requested records fall into one of FOIA's exemptions."  *Capital Collateral Counsel*, 331 F.3d at 802 (citation omitted); *see also Light v. U.S. Dep't of Justice*, 968 F. Supp. 2d 11, 26 (D.D.C. 2013) ("It is clear that 'disclosure, not secrecy, is the dominant objective of the [FOIA].'" (alteration added; citation omitted)).

A court reviews an agency's response to a FOIA request *de novo*, 5 U.S.C. § 552(a)(4)(B), and FOIA cases typically and appropriately are decided on motions for summary judgment.  *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 139 (1980).  Courts will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  More specifically, in a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced ... or is wholly exempt from the [FOIA's] inspection requirements.'"  *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records."  *Span v. U.S. Dep't of Justice,* 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and nonconclusory," *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citations omitted), and when they:

> describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Beltranena v. Clinton*, 770 F. Supp. 2d 175, 181–82 (D.D.C. 2011).  In determining whether the defendant agency has met its burden in support of non-production, "the underlying facts are viewed in the light most favorable to the [FOIA] requester." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).  In assessing the evidence, courts must determine whether the agency had an "adequate factual basis" for invoking the exemptions.  *Miccosukee Tribe*, 516 F.3d at 1244.  "[I]n this Circuit, an adequate factual basis may be established, depending on the circumstances of the case, through affidavits, a *Vaughn* Index, *in camera* review, or through a combination of these methods."  *Id.* at 1258.

**Discussion**

"The Freedom of Information Act codified 'a strong public policy in favor of public access to information in the possession of federal agencies.'"  *Broward Bulldog, Inc. v. U.S. Dep't of Justice*, 939 F.3d 1164, 1175 (11ᵗʰ Cir. 2019) ("*Broward Bulldog*") quoting *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1190 (11th Cir. 2007) (citation and internal quotation marks omitted).  The FOIA requires that "each

agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules ... shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

After an agency receives a request for records, it may withhold information from responsive documents only if it falls within one of nine statutory exemptions. *See Milner v. Dep't of Navy,* 562 U.S. 562, 565 (2011). Because "[t]he purpose of [the FOIA] is to encourage public disclosure of information," responsive documents "are presumed to be subject to disclosure unless [an agency] affirmatively establishes that the requested records fall into one of [the] exemptions." *Capital Collateral Counsel*, 331 F.3d at 802. But the FOIA also "expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of [the FOIA's] purposes and policies as [its] disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media,* – U.S. –, 139 S. Ct. 2356, 2366 (2019) (internal quotation marks omitted).

At the outset, the Court reviews whether the IRS has shown "beyond a material doubt" that it "conducted a search reasonably calculated to uncover all relevant documents." *Miccosukee Tribe*, 516 F.3d at 1248 (quoting *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1558 (11th Cir. 1990), *rev'd on other grounds* 502 U.S. 164 (1991) ("*Ray*"). Next, the Court analyzes whether the contested documents are properly withheld under the exemptions asserted and that all reasonably segregable portions have been disclosed.

## I.    <u>Adequate Search</u>

To establish the adequacy of a search for responsive documents, a government agency "must show beyond a material doubt ... that it has conducted a search reasonably calculated to uncover all relevant documents." *Miccosukee Tribe*, 516 F.3d at 1248 (alteration in original) (citation and internal quotation marks omitted). The agency "may meet this burden by producing affidavits of responsible officials 'so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith.'"[11] *Ray*, 908 F.2d at 1558 (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) ("*Miller*")).  If the agency satisfies this burden, "then the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith." *Id.; see also Karantsalis v. U.S. Dep't of Justice*, 635 F.3d 497, 500–01 (11th Cir. 2011).

Because "[t]he standard is one of reasonableness," the Act "does not require an agency to exhaust all files which conceivably could contain relevant information." *Ray*, 908 F.2d at 1558–59.  So, a requester cannot rebut a showing of an adequate search by arguing that he received only a subset of the documents that he thought existed.  *See Id.* at 1559 ("The plaintiffs' emphasis o[n] a particular reference to 582 interviews, while they received information regarding only 384 interviews, is not enough to rebut the government's showing of an adequate search.").  The agency "is not required ... to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which

---

11  Agency affidavits are accorded a presumption of good faith.  *Del Rio v. Miami Field Office of Fed. Bureau of Investigations*, No. 08-21103, 2009 WL 2762698, at *6 (S.D. Fla. Aug. 27, 2009) citing *Florida Immigrant Advocacy Ctr. v. Nat'l Sec. Agency*, 380 F. Supp. 2d 1332, 1343 (S.D. Fla. 2005).

they might be expected to be found." *Id.* (quoting *Miller*, 779 F.2d at 1385) ("[I]t is not necessary to create a document that does not exist in order to satisfy a ... request[er]." (internal quotation marks omitted)).

The IRS asserts the declarations of David Nimmo, Richelle Hawkins, and Andrew Keaton demonstrate that it performed an adequate search reasonably calculated to uncover all relevant documents.  DE 27-2 at 6-8.  Mr. Nimmo is a Disclosure Manager in the office of Government Liaison, Disclosure & Safeguards.[12]  Mr. Nimmo assigned Tax Law Specialist John Quigley to Scott's FOIA Request on May 22, 2018.[13]  Once Mr. Quigley received the FOIA Request, he began by searching through the internal personnel directory to search for each of the individuals identified in Scott's Request.[14]  Mr. Quigley's search confirmed that all three individuals were attorneys in the National Office.[15]  Mr. Quigley then sent a search memorandum requesting responsive records to the DLS branch within the Office of Chief Counsel.[16]  DLS is responsible for coordinating and processing all FOIA requests that seek records contained in the National Office.[17]  Because Scott's FOIA Request sought "records within the Office of Chief Counsel" and identified attorneys within the National Office, DLS was the appropriate office to conduct a search for responsive records.[18]

---

[12]  Mr. Quigley, the Tax Law Specialist who completed a portion of the search, is currently unavailable to serve as a declarant in this litigation due to the shelter-in-place directives in Alameda County in response to COVID-19, and she does not currently have telework capabilities.  Nimmo Decl. ¶ 7 n.3. However, Mr. Nimmo's declaration is sufficient to meet the IRS's burden in this case because Mr. Nimmo was at all relevant points in time Mr. Quigley's supervisor.  *Id.* ¶ 7.  Mr. Nimmo submits his declaration based on his personal knowledge and knowledge of official business records, including the case history notes.  *Id.* ¶ 5.
[13]  Undisputed Material Facts (hereinafter "UMF") ¶ 4.
[14]  UMF ¶ 5.
[15]  UMF ¶ 6.
[16]  UMF ¶ 7.
[17]  UMF ¶ 8.
[18]  UMF ¶ 9.

Ms. Hawkins is a Paralegal Specialist employed in the DLS branch of the Office of Chief Counsel, who was assigned the case on June 27, 2018.[19]  When Ms. Hawkins was assigned to the case, she was provided with a revised search memorandum from Mr. Quigley.[20]  The revised search memorandum identified eight written determination letters to be searched.[21]  Three of the written determination numbers that had been identified were not associated with PLRs.[22]  Scott accordingly agreed to limit the scope of his request to the following five written determination numbers:  201424002, 201431003, 201435013, 201445002, and 201502008.[23]

Ms. Hawkins' Declaration explains that the routine procedure for FOIA requests for written determination files is to instruct a legal secretary to retrieve the written determination files for the paralegal specialist who is assigned to the FOIA request (in this case Ms. Hawkins).[24]  Here, the legal secretary searched the Office of Chief Counsel's case management information system.[25]  CASE-MIS and its subsystems are electronic case management systems that are used, among other purposes, to track cases within the Office of Chief Counsel.[26]  Within CASE-MIS, the legal secretary searched for the written determination letters Scott identified.[27]  CASE-MIS indicated that each of the files associated with the written determinations were closed.[28]  Records maintained in closed legal files are generally stored in the DRU branch of the

---

19 UMF ¶ 24.
20 UMF ¶¶ 13, 24.
21 UMF ¶¶ 12-13.
22 UMF ¶ 26.
23 UMF ¶ 27.
24 UMF ¶¶ 14-15.
25 UMF ¶ 16.
26 UMF ¶ 17.
27 UMF ¶ 18.
28 UMF ¶ 19.

Office of Chief Counsel.[29]  The DRU is also the branch of the Office of Chief Counsel specifically responsible for storing PLR legal files.[30]  The DRU is the appropriate and customary location to search for files associated with the five written determination numbers that Scott identified.[31]  Accordingly, the legal secretary retrieved the files associated with the written determination letters identified by Scott from the DRU Branch.[32]

Ms. Hawkins received the written determination files that had been retrieved from the DRU Branch on June 27, 2018.[33]  Ms. Hawkins then digitized the records by scanning them.[34]  For each of the PLR files, she created a single PDF containing all of the records in that PLR file.[35]  This process preserved the PLR files in their original hardcopy format and allowed her to review the records electronically.[36]  Ms. Hawkins next reviewed each of the PLR files to separate the records into two categories: (1) records subject to the disclosure requirements of 26 U.S.C. § 6110,[37] and (2) records subject to the FOIA disclosure requirements.[38]  After separating the records, Ms. Hawkins was left with a total of 255 pages of records that were potentially responsive to Scott's FOIA request.[39]

---

29  UMF ¶ 20. *See also* CCDM 30.11.1.2.2.
30  UMF ¶ 21.
31  UMF ¶ 22.
32  UMF ¶ 23.
33  UMF ¶ 25.
34  UMF ¶ 28.
35  UMF ¶ 29.
36  UMF ¶ 30.
37  *See* UMF ¶ 32 n.4.
38  UMF ¶ 31.
39  UMF ¶ 34.

Once Scott instituted this litigation, the case was transferred to the Office of Chief Counsel.[40]  Mr. Keaton, an attorney assigned to Branch 6 of the Office of the Associate Chief Counsel (Procedure and Administration) was assigned to the case on February 6, 2019.[41]  Once, Mr. Keaton received the copies of potentially responsive materials that had been gathered by Ms. Hawkins, he conducted a preliminary review of those records.[42]  After this preliminary review, Mr. Keaton determined that a supplemental search was necessary because PLR files do not necessarily contain all communications pertaining to the PLR from all employees.[43]

Accordingly, Mr. Keaton emailed both Timothy Jones and Lewis Bell, attorneys in the Office of the Associate Chief Counsel (Financial Institutions & Products), regarding Scott's request.[44]  Both Timothy Jones and Lewis Bell were explicitly identified in Scott's request.[45]  Mr. Keaton provided Mr. Jones and Mr. Bell with the written determination number, the case number, and the requester name for each of the five PLRs at issue.[46]  Mr. Keaton later spoke with both Mr. Jones and Mr. Bell and instructed them to search all of their files, both paper and electronic, for any records of communications that may be potentially responsive to Scott's request using the written determination number, the case number, and the requester name.[47]  Mr. Keaton explicitly instructed Mr. Jones and Mr. Bell to search their Microsoft Outlook email accounts for all potentially responsive emails.[48]  Both Mr. Jones and Mr. Bell

---

40  UMF ¶¶ 39-40.
41  UMF ¶ 41.
42  UMF ¶ 42.
43  UMF ¶¶ 43-44.
44  UMF ¶ 45.
45  UMF ¶ 2.
46  UMF ¶ 46.
47  UMF ¶¶ 47, 49.
48  UMF ¶ 48.

provided Mr. Keaton with copies of all the potentially responsive records they had located and confirmed that they did not have any other potentially responsive records in their possession.[49]

Finally, Mr. Keaton emailed the last individual identified in Scott's request, Ms. Helen Hubbard.[50]  As he had done with Mr. Jones and Mr. Bell, Mr. Keaton provided Ms. Hubbard with the written determination number, the case number, and the requester name for each of the five PLRs at issue.[51]  Mr. Keaton requested that Ms. Hubbard search all of her files, both paper and electronic, for any records potentially responsive to Scott's request.[52]  Ms. Hubbard confirmed that she had conducted the requested search of her files, including her Microsoft Outlook email account, and located no records responsive to Scott's request.[53]

The IRS asserts the declarations of Mr. Nimmo, Ms. Hawkins, and Mr. Keaton provide a "reasonably detailed, non-conclusory" explanation of the IRS's search and supplemental search.  DE 27-2 at 12.  The IRS asserts that its searches, as set forth in the declarations, were "reasonably calculated to uncover all relevant records" and were made in good faith.  *See id.*  The Court agrees that the IRS has met the requirements for an adequate FOIA search.  Having satisfied the burden of showing beyond a material doubt that it has conducted a search reasonably calculated to uncover all relevant documents, the burden then shifts to Scott to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good

---

49  UMF ¶¶ 50-54.
50  UMF ¶¶ 2, 55.
51  UMF ¶ 56.
52  UMF ¶ 57.
53  UMF ¶ 58.

faith.  Scott attempts this by asserting the following arguments (reproduced largely

verbatim):

(1) Hawkins failed to follow ¶ 4 of the Internal Revenue Manual ("IRM") 30.11.1.2.2
    "which generally provides for the expedited[54] release of records released as a
    result of 'a prior 6110/FOIA request for records.'  This failure to follow the IRM
    provision and to properly identify and release such records is clear evidence of an
    inadequate search."  DE 36 at 12.

(2) "Additionally, Hawkins apparently failed to follow IRM 11.3.8.10(3): 'If combined
    IRC § 6110 and Freedom of Information Act (FOIA) requests are received,
    forwarding and notification instructions contained in IRM 11.3.8.7.1 above should
    be followed for the processing of the IRC § 6110 part of the request.  Routine FOIA
    processing instructions should be used for the remaining portion of the request."
    DE 36 at 12.

(3)  "Defendant submitted the declarations of Andrew Keaton (three) and the
    declaration of Hawkins to substantiate the adequacy of the search.  However,
    Keaton stated in his first sworn declaration that Defendant had identified
    'approximately 250 pages of responsive material.'  DE 14-2 ¶ 9.  That was written
    March 14, 2019, after about ten months of search, collection, sorting, and
    examination by Hawkins and Keaton.  DE 27-3; DE 27-4; DE 14-2.

    In his second and third declarations Keaton changed that characterization to
    "potentially responsive" records.  DE 17-1 ¶ 5; DE 27-5 ¶ 10.  The records had been
    collected by Hawkins, and then sorted to isolate "potentially responsive" records
    between June 27, 2018 (DE 27-4 ¶ 4) and September 24, 2018 (DE 27-4 ¶ 21).  By
    December 22, 2018, Hawkins had not eliminated a single page as non-responsive.
    One might think that would be the first order of business, before determining
    whether FOIA exemptions applied, in order to reduce the number of records
    scrutinized for exemptions.  From his assignment to this matter, February 6, 2019
    (DE 27-5 ¶ 6), until his first declaration more than a month later, and after a
    review sufficient to establish that a supplemental search was needed (DE 14-2 ¶
    12) Keaton had not eliminated a single page.  Yet, by September, Keaton had
    eliminated more than 60% of all the assembled records as "nonresponsive."  DE 17-
    1 ¶ 8.  This elimination of such a large quantity of material so late in the process,
    especially after the initial review by Hawkins, seems suspect."  DE 36 at 12.

(4) "Hawkins admits separating records into § 6110 and non-§ 6110.  Hawkins cites
    Internal Revenue Manual 30.11.1.2.2, entitled '[FOIA] Requests for Chief Counsel
    Records', regarding the storage of records.  However, Hawkins apparently failed to

---

54  IRM 30.11.1.2.2(4), which is the only subsection of IRM 30.11.1.2.2 which addresses the release of
records that have been previously released pursuant to a prior 6110/FOIA request, is quoted in toto
*infra*, and does not include the directive that the records be re-released on an "expedited" basis.

follow ¶ 4 of that section, which generally provides for the expedited release of records released as a result of 'a prior 6110/FOIA request for records.' This failure to follow the IRM provision[55] and to properly identify and release such records is clear evidence of an inadequate search.  Additionally, Hawkins apparently failed to follow IRM 11.3.8.10 (3): 'If combined IRC § 6110 and Freedom of Information Act (FOIA) requests are received, forwarding and notification instructions contained in IRM 11.3 .8. 7.1 above should be followed for the processing of the IRC § 6110 part of the request.  Routine FOIA processing instructions should be used for the remaining portion of the request.'"  DE 36 at 12.

(5) "Having acknowledged that OCC attorneys do not maintain complete files (DE 27-5 ¶ 11), Keaton went to those same attorneys for his supplemental search.  At the end of Hawkins' declaration, she omits the point made in other search declarations that she 'is not aware of any other custodian or location' likely to maintain records responsive to the request.  *See, e.g.*, DE 27-5 ¶ 18 (Keaton); case 18-cv-81742 DE 52-¶ 23.  Neither Hawkins nor Keaton address the email backup system for OCC discussed in the letter to the Senate Finance Committee dated June 13, 2014 (DE 29 pp. 7-9) as a possible location to be searched for records.

The adequacy of the search turns on the declarations of Keaton, which have inconsistencies and are not entitled to a presumption of good faith, and of Hawkins, who describes acts that do not follow the IRM provisions.  Defendant claims that many records were separated as subject to disclosure under § 6110 (Hawkins DE 27-4 ¶¶ 17, 18, & 20), yet Defendant did not initiate a separate response under that "disclosure regime" (*Id.* ¶ 17) as provided for by IRM 11.3.8.10 and 11.3.13.5.12.  The lack of good faith is readily apparent.

The adequacy of the search also turns on the classification of records as responsive or non-responsive.  The timing and circumstances of Keaton's determination as to non-responsive records is suspect."

DE 36 at 13.

The IRS's response:

As an initial matter, the IRS correctly asserts that Scott's objections regarding

its alleged failure to follow Internal Revenue Manual provisions 30.11.1.2.2(4),[56]

---

55 *See* n. 54, *supra.*
56 *See* page 30, *infra.*

11.3.8.10(3)[57] and 11.3.13.5.12 is not a source of rights enforceable by taxpayers. *See, Romano-Murphy v. CIR,* 816 F.3d 707, 719 (11th Cir. 2016) (explaining that while the IRM has persuasive authority, it "does not have the force of law"); *Reich v. Manganas,* 70 F.3d 434, 437 (6th Cir. 1995) ("Internal operating manuals, however, do not carry the force of law, bind the agency, or confer rights upon the regulated entity."); *Marks v. Comm'r,* 947 F.2d 983, 986 n.1 (D.C. Cir. 1991) ("It is well-settled, however, that the provisions of the [IRM] are directory rather than mandatory, are not codified regulations, and clearly do not have the force and effect of law."); *In re Lewis,* 557 B.R. 233, 239 n.7 (M.D. Ala. 2016) ("the IRM is not a source of rights enforceable by taxpayers") quoting *Brombach v. Comm'r of Internal Revenue,* No. 7924-07L, 2012 WL 4009431, at *10 (T.C. Sept. 12, 2012); *see also Vallone v. Comm'r,* No. 24111-84, 1987 WL 49300, 88 T.C. 794, 811 (T.C. April 6, 1987) ("I.R.M. requirements are necessarily merely directory and not mandatory and noncompliance does not render the action of the ... [IRS] invalid."). Thus, while the IRM provides recommended procedures, the IRS cannot be sued for failing to follow each and every provision therein. Scott's assertion that the search was inadequate because it purportedly did not follow certain IRM provisions is therefore rejected.

Even if the IRM had the force and effect of law, which it does not, the IRS asserts that Scott's speculation that it did not comply with IRM 30.11.1.2.2(4) is

---

57 "If combined IRC §6110 and Freedom of Information Act (FOIA) requests are received, forwarding and notification instructions contained in *IRM 11.3.8.7.1* above ("Any request relating to a Headquarters written determination will be mailed or faxed to the Disclosure Centralized Processing Unit (CPU) for response. . . The receiving office will advise the requester of the procedure and request that any future requests be properly submitted to the Disclosure Centralized Processing Unit. It may be necessary to split a request and provide partial service locally if a request covers both area and Headquarters written determinations.") should be followed for the processing of the IRC §6110 part of the request. Routine FOIA processing instructions should be used for the remaining portion of the request. *See* IRM 11.3.13, Freedom of Information Act (FOIA).

disproven by the declarations in this case.   IRM 30.11.1.2.2(4) provides in toto:

> **Requests for Previously Processed Copies of section 6110/FOIA Material in the National Office.** If there has been a prior section 6110/FOIA request for records, the DLS paralegal specialist should first determine whether additional records may have been generated since the prior request was processed. If so, the steps set forth in 30.11.1.2.2 (1) should be followed. If, however, no additional records are expected to have been created, in lieu of retrieving the closed legal file, the DLS paralegal specialist will obtain a copy of the records, as previously disclosed, and a copy of any written articulation covering redactions in those records from the file room. DLS will then review the records, bearing in mind any changes which may be brought about by the passage of time or other changes in circumstances. For example, if the records had previously been withheld because they related to a pending investigation that has since been closed and release of the records would no longer interfere with the investigation, there may no longer be a basis for withholding the records. Similarly, records that were previously withheld under the deliberative process privilege and are 25 years old may no longer be withheld under that justification.   See Note at CCDM 30.11.1.8(1).

*See*, http://www.irs.gov/irm.   Scott asserts in (1) and (4) above that the IRS did not comply with this section which "generally provides for the expedited release of records."   The IRS does not address this specific assertion but instead asserts that it complied with the provision.   Hawkins Decl. ¶¶ 9-11 (DE 27-4.)  Even if the release took a long time, without more, there is nothing to suggest that a delay means the search was inadequate.

Regarding Scott's assertion that the IRS did not comply with IRM 11.3.8.10 ((2), (4) and (5) above) and 11.3.13.5.12 ((5) above), the Court agrees with the IRS that these arguments are without merit because these sections are inapplicable:  Scott did not submit a combined § 6110 and FOIA request, and his FOIA request was not unclear.

First, IRM 11.3.8.10 explicitly provides, in pertinent part, that:

(3) If combined IRS § 6110 and [FOIA] requests are received, forwarding and notification instructions contained in IRM 11.3.8.7.1 above should be followed for the processing of the IRC § 6110 part of the request. Routine FOIA processing instructions should be used for the remaining portion of the request.

IRM 11.3.8.10 (2)-(3).  Accordingly, IRM is only applicable where either a § 6110 request is incorrectly sent to a FOIA processing office or a combined FOIA and § 6110 request is submitted. *Id.*

Here, Scott's FOIA request explicitly states that it is "a FOIA request for certain records within the office of Chief Counsel."  DE 27-6, Ex. A (emphasis added).  While Scott requests a copy of *all communications* originated by certain individuals during a certain period of time *regarding* any Private Letter Ruling, Scott's request makes no mention of a final written determination, background file documents, § 6110, and does not provide the requisite information necessary for a request under § 6110.  *See* 26 C.F.R. § 301.6110-1 (laying out the procedures for public inspection of written determinations and background file documents).

"Section 6110 governs the disclosure of final written determinations and 'background file documents.'"  Hawkins Decl. ¶ 18.  Ms. Hawkins' Declaration reveals that the IRS correctly did not consider Scott's request to be a combined FOIA and § 6110 request because she carefully went through the applicable PLR files, "separated the final written determination and 'background file documents' from the other records in each file . . . [because] [t]hese other records are subject to the disclosure requirements of the FOIA."  Hawkins Decl. ¶¶ 19-20.  Accordingly, IRM 11.3.8.10 is inapplicable.

Second, IRM 11.3.13.5.12 is only applicable to FOIA requests that are unclear.

That section explains that "[a]fter analysis, it may be unclear which statute the

requester is using to seek access." IRM 11.3.13.5.12. The following variations of

"unclear requests" may be encountered: (1) the request cites neither the FOIA nor

the Privacy Act, (2) the request cites both the FOIA and the Privacy Act, and (3) the

request cites one Act, but the content of the request appears more appropriate to the

other. *Id.* IRM 11.3.13.5.12 does not involve or mention requests under § 6110.

Because Scott's request is clear, explicitly states that it is a FOIA request, and does

not cite the Privacy Act, IRM 11.3.13.5.12 is likewise inapplicable.

Finally, in his Reply, Scott asserts the re-release[58] of three partial pages (*see*

UMF ¶ 83) is evidence that

> It is unknown which other records among those withheld might have been
> previously released. Defendant seems intent on concealing that until it is
> inescapably caught. It is unknown which other records not included in the
> search results because of Defendant's arbitrary exclusion of records subject to
> § 6110 but separately released under those regulations, and therefore expressly
> in the public domain as were the re-released pages, were not released to
> Plaintiff. Clearly, this Court should order the new search for responsive
> records, even those subject to § 6110, and the prompt release to Plaintiff of
> those previously released to others. Should there be additional records subject
> to § 6110 and the review process associated with the first release of such
> records, then Defendant should consult with Plaintiff, as with any other
> request subject to § 6110.

DE 39 at 6.

The fact that the IRS re-released a partial § 6110 document in another FOIA

case does not mean that the Court should direct the IRS to search for § 6110

---

58  In case No. 18-81742-CIV-MARRA, in "a show of good faith, and in an attempt to narrow the issues
currently before the Court, the Service . . . re-released, in part, the pages identified by James Scott in
his Sur-Reply. The Service re-released those pages so that the pages at issue in this FOIA action match
what has been released by the Service in response to Mark Scott's § 6110 request."  DE 57 at 4.

responsive records in this case,[59] or that the search in response to Scott's request in this case was inadequate.  "Congress, wishing to exclude section 6110 from FOIA, specifically made known its intention by providing that section 6110 was to be the exclusive remedy where disclosure of written determinations were sought and that the rules and procedure of FOIA would **not** apply."  *Long v. U.S. I.R.S.*, 742 F.2d 1173, 1178 (9th Cir. 1984) (emphasis added); 26 U.S.C. § 6110(m); *Church of Scientology of Calif. v. I.R.S.*, 792 F.2d 146, 149 (D.C. Cir. 1986) (noting that § 6110 supplants FOIA for documents covered by that section); *Conway v. U.S. I.R.S.*, 447 F.Supp. 1128, 1131 (D.D.C. 1978) (finding that the legislative history of § 6110 demonstrates that Congress intended for it to replace FOIA); *Fruehauf Corp. v. I.R.S.*, 566 F.2d 574, 577 (6th Cir. 1977) ("*Fruehauf*") ("With respect to these particular documents, Congress intended that § 6110 provide the exclusive means of public access, ruling out resort to the regular FOIA procedures."); *see also Highland Capital Mgmt, LP v. I.R.S.*, No. 3:17-cv-2906-G, 2019 WL 1227782, at *8 (N.D. Tex. Mar. 15, 2019) (holding that § 6110, and not the FOIA, is the exclusive remedy for disclosure of written determinations).  Scott has failed to rebut the IRS's evidence to show that the search was not reasonable or not conducted in good faith.

As far as Scott objection in (5) above suggesting that the IRS acknowledges "that OCC attorneys do not maintain complete files," Scott misconstrues Keaton's Declaration.  Mr. Keaton merely stated that "[b]ecause PLR files do not necessarily

---

59  For the first time in his Cross-Motion for Summary Judgment, Scott asks that the Court order the IRS to release records under § 6110.  DE 36 at 26-30.  In order to compel disclosure of records under § 6110, a requester must make a written submission, exhaust all administrative remedies, and then file an action under § 6110 in either the District Court for the District of Columbia or the U.S. Tax Court.  26 U.S.C. § 6110(f)(4)(A).

contain all communications pertaining to the PLR from all employees, I reasoned that additional records of such communications may exist outside of the PLR files." Keaton Decl. ¶ 11, DE 27-5.  Such statement is evidence of a thorough analysis of Scott's request, and the Court rejects Scott's suggestion that the statement is an admission that the PLR files were incomplete.

As far as Scott's assertion in (3) above, that it is suspect that late in the process 60% of all the assembled records were eliminated as nonresponsive, the IRS refers to its response to Scott's Motion to Compel where this issue was previously raised.  DE 30 at 8-11.  The FOIA does not require an agency to account for the records that are not responsive to a request.  *Lawyers Ass'n v. Exec. Office for Immigration Review,* 830 F.3d 667, 677 (D.C. Cir. 2016) (explaining that the FOIA "sets forth the broad outlines of a process for agencies to follow when responding to FOIA requests: first, identify responsive records; second, identify those responsive records or portions of responsive records that are statutorily exempt from disclosure"); *Citizens for Responsibiilty & Ethics In Washington v. DOJ,* 48 F. Supp. 3d 40, 52 (D.D.C. 2014) ("[W]hile most FOIA cases deal with documents that are located and then withheld under a particular exemption, *non-responsive records need no such justification*." (emphasis added)).  Absent evidence of bad faith, "any documents deemed non-responsive . . . are assumed to be so."  *W. Values Project v. DOJ*, 317 F. Supp. 3d 427, 437 (D.D.C. 2018).  Therefore, "[a]n agency is not required "to disclose records to a FOIA requester that it has reviewed in the process of conducting its search and determined to be non-responsive."  *Brown v. FBI*, 822 F. Supp. 2d 1, 6 (D.D.C. 2011); *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp., 2d 140, 156 (D.D.C.

2010), aff'd, No. 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010).

One court in the District of Columbia has determined that a FOIA requester is not "entitled to interject [himself] into the agency's general responsiveness determinations." *Leopold v. CIA*, 177 F. Supp. 3d 479, 489 (D.D.C. 2016); *see also McLeod v. U.S. Dep't of Justice*, No. CIV.A. 06-0247(JDB), 2006 WL 2982333, at *4 n.5 (D.D.C. Oct. 18, 2006) (explaining that its jurisdiction under the FOIA "extends only to claims predicated on the improper withholding of responsive records" and as a result it lacked jurisdiction to address information from a non-responsive document).  This is because if courts were to scrutinize all aspects of the agency's efforts, including its determination as to the responsiveness of records, it would "run afoul of the principle that courts confronted with FOIA requests should not attempt to micromanage the executive branch." *Leopold,* 177 F. Supp. 3d at 489.

Here, Scott has not provided any justification for the Court to doubt the IRS's good faith in its determination of non-responsive records.  His sole argument seems to be that in an early declaration filed in this case, Mr. Keaton characterized the 255 pages of records as "responsive" rather than "potentially responsive."   However, in Mr. Keaton's third declaration, he certified that he reviewed "all the potentially responsive records collected by the IRS (including those previously collected by DLS)" and that of all the records he reviewed, "only 104 pages were in fact responsive" to Scott's FOIA Request.  Keaton Decl. ¶ 19, DE 27-5.

A review of the declarations submitted in support of the IRS's motion for summary judgment demonstrates why certain records were deemed nonresponsive.  As explained in the Declaration of Ms. Hawkins, a legal secretary retrieved all files

associated with the eight written determination letters Scott identified.  Hawkins
Decl. ¶¶ 7, 11, DE 27-4.  The legal secretary then provided Ms. Hawkins with all the
files he had retrieved from the DRU branch within the Office of Chief Counsel, which
were related to the written determination letters Scott identified.  *Id*. ¶ 12.  Ms.
Hawkins then reviewed each of the files and separated the records into two
categories: (1) records subject to the disclosure requirements of § 6110; and (2)
records subject to the disclosure requirements of the FOIA.  "This step was necessary
because written determination files, including PLR files, generally contain records
subject to these two separate disclosure regimes, section 6110 and FOIA."  Hawkins
Decl. ¶ 17.

Written determination files, including PLR files, generally contain other records
that are neither final written determinations nor "background file documents."
These other records might include, for example, drafts of the written determination
and internal IRS communications (*see* CCDM 37.1.1.1.1(3)).  These other records are
subject to the disclosure requirements of the FOIA.  Hawkins Decl. ¶¶ 19-20.  Scott's
request only sought "any outgoing letter, email or record of other communication,
originated by any of Timothy L. Jones, Helen M. Hubbard, or Lewis Bell regarding any
Private Letter Ruling request, between 8/1/2013 and 05/21/2014."  *Id*. ¶ 5; Keaton
Decl. ¶ 7, DE 27-5, DE 1 at 6 (Ex. 1).  Accordingly, not all of the files that had been
retrieved from the DRU were responsive to Scott's Request.  In fact, only 104 pages
fell within the scope of Scott's FOIA Request in that they consisted of communications
originated by Mr. Jones, Ms. Hubbard, or Mr. Bell between 8/1/2013 and 05/21/2014.
Keaton Dec. ¶ 19, DE 27-5.

The IRS has already adequately described why certain records were deemed non-responsive, and the Court rejects Scott's categorization of the order of review of the documents and the large quantity of documents deemed non-responsive as "suspect."  Scott's contention that the declarations of Keaton and Hawkins are not entitled to a presumption of good faith is likewise rejected.  Scott has failed to rebut any facts material to whether the IRS's search was reasonable.  The Court therefore concludes, as a matter of law, that the IRS conducted a reasonable search.

## II.   <u>Withheld Pages</u>

A district court has jurisdiction in a FOIA action "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  Under FOIA, records are presume[d to be] subject to disclosure." *Ely v. Fed. Bureau of Investigation*, 781 F.2d 1487, 1490 (11th Cir. 1986).  The government agency resisting disclosure thus carries the burden of rebutting this presumption. *Id.* ("FOIA places on the courts the obligation to consider and resolve competing claims of privilege and access, relegating the government to the role of furnishing evidence to rebut the presumption of disclosure."); *see also Miccosukee Tribe*, 516 F.3d at 1258 (agency has the burden of proving that it properly invoked any FOIA exemptions when it decided to withhold information).

When reviewing the denial of a FOIA request, a trial court engages in a "two-step inquiry: the court must determine that (1) the information was of the sort covered by the relevant exception and then undertake (2) a balancing of individual privacy interests against the public interest in disclosure that may reveal that

disclosure of the information constitutes a clearly unwarranted invasion of privacy."
*Ely*, 781 F.2d at 1490, n.3 (internal quotations and alterations omitted).

To justify withholding a record, an agency may rely on reasonably detailed affidavits describing the documents and facts sufficient to establish an exemption. *EPA v. Mink*, 410 U.S. 73, 89 (1973); *Jeanty v. FBI*, No. 13-20776-CIV, 2014 WL 206700, at *3 (S.D. Fla. Aug. 25, 2014). An agency need not provide such detail about the information withheld so as to defeat the purpose of asserting the exemption. *Iglesias v. CIA*, 525 F. Supp. 547, 553 (D.D.C. 1981).

In this case, the IRS located a total of 104 pages of responsive documents. The IRS released 1 page in full, 12 pages in part, and withheld 91 pages in full.[60] The records are being withheld pursuant to FOIA Exemption 3 in conjunction with 26 U.S.C. § 6103 (tax returns and return information), FOIA Exemption 5 in conjunction with the deliberative process privilege, and FOIA Exemption 6 ("personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.")[61] 5 U.S.C. § 552(b)(6).

### A. Pages Withheld Pursuant to FOIA Exemption 3 in conjunction with 26 U.S.C. § 6103 (tax returns and return information)

The IRS withheld eight pages in part and 34 pages in full under 5 U.S.C. § 552(b)(3) ("Exemption 3")[62] and 26 U.S.C. § 6103(a).[63] The information withheld in part is located on pages 65-66, 72-76, and 86, and the pages withheld in full are

---

60 UMF ¶ 61; *see* DE 41 (documents under seal).
61 UMF ¶ 80-82. Scott does not challenge the claim of Exemption 6 with respect to the redactions on pages 68-71 (Keaton Decl. at 12). DE 36 at 13 of 36.
62 Exemption 3 permits Defendant to withhold those documents that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).
63 26 U.S.C. § 6103(a) mandates that tax returns and return information be kept confidential.

located on pages 1-2, 3-12, 13-15, 24, 33-42, 51, 59-64 and 67.[64]  Scott does not

challenge the eight pages being withheld in part.  DE 36 at 16 of 36.  In addition, the

Court has reviewed these eight pages *in camera* and finds the redactions made

pursuant to Exemption 3 and 26 U.S.C. § 6103(a) to be validly redacted.  Accordingly,

the IRS is granted summary judgment as to pages 65-66, 72-76, and 86.

The IRS states that the information on the pages withheld in full consist of the

name and contact information of a third-party taxpayer representative and the name

and other return information of a third-party taxpayer.  Keaton Decl. ¶ 28(b).  The IRS

further states that other withheld pages consist of "part of a written determination or

background file document that is not open to the public under § 6110." [65]  Keaton

Decl. ¶ 28 (DE 38 at 14 of 29).

**Tax Returns and Return Information**

Section 6103 of Title 26 is an exempting statute within the meaning of FOIA

Exemption 3.  As a result, records protected under § 6103 are exempt from disclosure.

*Chamberlain v. Kurtz*, 444 U.S. 842 (1979); *Lehrfeld v. Richardson*, 132 F.3d 1463,

1466 (D.C. Cir. 1998); *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997); *Currie*

*v. IRS*, 704 F.2d 523, 527 (11th Cir. 1983) (citing *Chamberlain*, 589 F.2d 827).  Section

6103's prohibitions are clear:  tax returns and return information are to be kept

confidential, unless disclosure is permitted by Title 26.  26 U.S.C. § 6103; *see also*

*Church of Scientology of Cal. v. IRS*, 484 U.S. 9 (1987).  Thus, "while FOIA's basic aim

---

64  UMF ¶¶ 69-70; *see* DE 41 (documents under seal).

65  26 U.S.C. § 6103(b)(2)(B) states, in pertinent part, that "return information" includes "any part of any written determination or any background file document relating to such written determination . . . which is not open to public inspection under section 6110."  *See also*, *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 19 (D.D.C. 1997).

is sunlight, Congress decided that with respect to return information, 'confidenti-ality, not sunlight, is the proper aim.'" *Hull v. IRS*, 656 F.3d 1174, 1178 (10th Cir. 2011) (quoting *Aronson v. IRS*, 973 F.2d 962, 966 (1st Cir. 1992)).

While the IRS's rationale is that the "material consists of the name and contact information of a third party taxpayer representative and the name and other return information of a third party taxpayer" (DE 27-5 at 8-9), the assertion of this exemption to the whole of the withheld 34 pages is rejected.

The "core purpose" of section 6103 is to "protect[ ] taxpayer privacy." *Tax Analysts*, 117 F.3d at 615, citing *Church of Scientology of Cal. v. IRS*, 484 U.S. 9 (1987).  It was amended into its current form in 1976, "in the wake of Watergate and White House efforts to harass those on its 'enemies list,'" and it "restricts government officers and employees from revealing 'any return' or 'return information.'" *Id*. at 611.  The definition of "return information" is very broad, and it includes:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense. . .

> * * *

> *but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer....*

26 U.S.C. § 6103(b)(2)(A) (b)(2) (emphasis added).

Although this definition does not lend itself to easy interpretation, courts agree that it "reaches far beyond what the phrase 'return information' would normally conjure up." *Landmark Legal Found. v. IRS,* 267 F.3d 1132, 1138 (D.C. Cir. 2001); *see also Hull v. IRS,* 656 F.3d 1174, 1183 (10th Cir. 2011) ("The Code expansively defines return information...."); *Judicial Watch v. Rossotti*, 285 F.Supp.2d 17, 29 (D.D.C. 2003) ("The terms 'returns and return information' are broadly defined in [the] statute...."). Still, the definition has limits. Section 6103 of Title 26 does not operate independently of FOIA (5 U.S.C.A. § 552) as the sole standard governing disclosure of tax returns and return information, but instead should function as applied to Exemption 3 (§ 552(b)(3)) of the FOIA. *Britt v Internal Revenue Service,* 547 F Supp 808, 810 (D.D.C. 1982). As the Court of Appeals observed in *Church of Scientology of California v. IRS*, 792 F.2d 146 (D.C. Cir. 1986), *aff'd*, 484 U.S. at 18, "Congress would not have adopted such a detailed definition of return information in Section 6103 if it had simply intended the term to cover all information in IRS files." *Id*. at 151.

To qualify as "return information," the information need not "identify a particular taxpayer," *Church of Scientology*, 484 U.S. at 15, but it must be "unique to a particular taxpayer," or "taxpayer-specific." *Tax Analysts*, 117 F.3d at 614. "Taxpayer-specific" information is information that would directly or indirectly reveal the taxpayer's identity. *Cencast Services, L.P. v. U.S.*, 91 Fed. Cl. 496, 509 (Fed. Cl. 2010). "[T]he mere removal of identifying details" does not alter the confidentiality of documents that constitute "return information." *Church of Scientology,* 484 U.S. at 15. At the same time, when a record that is not itself "return information"

contains both return information and non-return information, the non-return information can be released if it is reasonably segregable.   *See, e.g., Tax Analysts*, 117 F.3d at 616, 620 (holding that the IRS could redact "true return information" from certain field memoranda, but that the legal analyses contained in the memoranda were not exempt "return information"); *see also, Cause of Action v. Internal Revenue Service*, 125 F.Supp.3d 145, 163-64 (D.D.C. 2015).

The Court has reviewed the subject pages *in camera* and finds these pages are not "return information," do not wholly consist of the name and other identifying return information of a third-party taxpayer and representative, and that this information is segregable.  DE 41 (under seal).  Accordingly, the following pages for which the IRS asserts this single exemption, the specific taxpayer information should be redacted, and the remainder of each page released to Scott:  pages 8-12, 15, 24, 33, 34, 42, 51, 59-64.[66]

**Written Determinations or Background File Documents**

The displacement of the FOIA by § 6110 with respect to certain IRS materials affirms the availability to the public of IRS written determinations and background materials.[67]  It merely alters the procedures for obtaining disclosure of these documents.  In this case that displacement means that Scott cannot obtain from this Court the release of any withheld part of any written determination or any

---

[66] The Court sees no exempt material on pages 24, 42 and 51 and those pages should, therefore, be provided to Scott without redaction.

[67] Section 6110 is a disclosure provision rather than a nondisclosure provision. *See* 26 U.S.C. § 6110(a) ("Except as otherwise provided in this section, the text of any written determination and any background file document relating to such written determination shall be open to public inspection at such place as the Secretary may by regulations prescribe."); *Electronic Frontier Foundation v. United States Dep't of Justice*, 376 F. Supp. 3d 1023, 1032 (N.D. Cal. 2019).  Section 6110 includes various exemptions from disclosure substantially patterned after the exemptions in the FOIA, *see* 26 U.S.C. § 6110(c); *Britt v. I.R.S.*, 547 F. Supp. 808, 812 (D.C.D.C. 1982).

background file document relating to such written determination.  If he applies to the IRS under applicable procedures, everything which would be available to him pursuant to a FOIA request will presumably be disclosable to him as a member of the public under § 6110(a), subject to the exemptions from disclosure in § 6110(c).  *Grenier v. U.S. Internal Revenue Service*, 449 F. Supp. 834, 842 (D. Md. 1978).  Even if Scott were to seek release of the PLR materials pursuant to the proper applications, the IRS asserts that these pages are not open to the public under § 6110(c).  *See* Keaton Decl. ¶ 28; *see also* DE 38 at 14 of 29.  That determination, however, need not be made in this case.  *Fruehauf*, 566 F.2d 574 at 580, n.9 (§ 6110(c)) generally will require deletion in a written determination or background file document of the names, addresses, and other identifying details of the person to whom the determination pertains and of certain other persons).

Accordingly, the IRS is entitled to summary judgment as to the pages withheld in full located on pages 1-2,[68] 3-7, 13-14 and 35-41, and Scott is entitled to summary judgment as to the pages withheld in full located on pages 8-12, 15, 24, 33, 34, 42 and 51.  DE 41 (under seal).

### B. Pages Withheld Pursuant to FOIA Exemption 5 (Deliberative Process Privilege)

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This provision shields those documents, and only

---

[68]  The IRS asserts pages 1-2 and 13-14 are being withheld in full because these pages contain both taxpayer information <u>and</u> material that is deliberative.  The Court has carefully reviewed these pages and concurs with this assessment.

those documents, normally privileged in the civil discovery context.  *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) ("*Sears, Roebuck & Co.*").  "Stated simply, '[a]gency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (*e.g.*, attorney-client, work product, executive privilege) are protected from disclosure under Exemption 5.'"  *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004) ("*Nat'l R.R. Passenger Corp.*") citing *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999); *Enviro Tech Int'l, Inc. v. USEPA*, 371 F.3d 370, 374 (7th Cir. 2004) ("Conversely, if a private litigant could not obtain certain records from the agency in discovery, Exemption 5 relieves the agency of the obligation to produce that document to a member of the public.").

"To fall within the deliberative process privilege, a document must be <u>both</u> '<u>predecisional</u>' and '<u>deliberative</u>.'"  *Nat'l R.R. Passenger Corp.*, 376 F.3d at 1277 (citation omitted, emphasis added); *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

A document is <u>pre-decisional</u> when it is "received by the decision-maker on the subject of the decision prior to the time the decision is made."  *Sears, Roebuck & Co.*, 421 U.S. at 151.  To be predecisional, information must be "prepared in order to assist an agency decision-maker in arriving at his decision."  Therefore, by definition, the record must have been generated before the adoption of an agency policy, and "the record must bear on the formulation or exercise of policy-oriented judgment."  *Nat'l R.R. Passenger Corp.*, 376 F.3d at 1277-78.  It may "include recommendations, draft documents . . . and other subjective documents which reflect the personal

opinions of the writer rather than the policy of the agency." *Id.* at 1277, citing

*Florida House of Rep. v. U.S. Dep't of Commerce*, 961 F.2d 941, 945 (11th Cir. 1992)

("*Florida House*").

A document is considered <u>deliberative</u>, if it makes recommendations or

expresses opinions on legal or policy matters. *Broward Bulldog*, 939 F.3d at 1195

citing *Miccosukee Tribe*, 516 F.3d at 1263.  In the Eleventh Circuit, "[t]he only inquiry

that should be made in deciding whether something should be denoted opinion, and

hence deliberative, is: Does the information reflect the give-and-take of the

consultive process?"  *Florida House*, 961 F.2d at 949 citing *Coastal States Gas Corp. v.

Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("*Coastal States*"); *see also Sears,

Roesbuck & Co.*, 421 U.S. at 150 (courts should "focus on documents 'reflecting

advisory opinions, recommendations and deliberations comprising part of a process by

which governmental decisions and policies are formulated.'").

"The underlying purpose of the deliberative process privilege is to ensure that

agencies are not forced to operate in a fish bowl. . . .  Therefore, courts must focus

on the effect of the material's release." *Nat'l R.R. Passenger Corp.*, 376 F.3d at 1278

(citations omitted).  The exemption thus covers recommendations, draft documents,

proposals, suggestions, and other subjective documents which reflect the personal

opinions of the writer rather than the policy of the agency.  Documents which are

protected by the exemption are those which would inaccurately reflect or

prematurely disclose the views of the agency, suggesting as agency position that

which is as yet only a personal position.  To test whether disclosure of a document is

likely to adversely affect the purposes of the exemption, courts ask themselves

whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency. *Coastal States*, 617 F.2d at 866.

"Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *Coastal States*, 617 F.2d at 866 citing *United States v. Nixon,* 418 U.S. 683, 705 (1974); *Broward Bulldog*, 939 F.3d at 1194 (the deliberative process privilege is designed both to minimize public confusion about agency rationales and actions and "to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny."). It is said case law in this area is of limited help, because the deliberative process exemption is so dependent upon the individual document and the role it plays in the administrative process. *Coastal States*, 617 F.2d at 866.

"The privilege that has been held to attach to intragovernmental memoranda does, however, have finite limits, and one of these limits is that memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda but severable from its context is generally available for discovery by private parties in litigation with the government. Exemption 5, therefore, 'requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other.'" *Pacific Molasses Co. v. N. L. R. B. Regional Office # 15*, 577 F.2d 1172, 1183 (5th Cir. 1978) (citation omitted).

In 2016, the President signed into law the FOIA Improvement Act of 2016, Pub.

L. No. 114-185, 130 Stat. 538.  Among other things, the Act codified the "foreseeable harm" standard and creates additional administrative review processes that allow requesters to challenge initial agency decisions to withhold requested records.  It provides that

• Agencies "shall withhold information" under the FOIA "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."   5 U.S.C. § 552(a)(8)(A)(i).

• Agencies shall "consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible."

• Agencies shall "take reasonable steps necessary to segregate and release nonexempt information."

• This provision does not require disclosure of information "that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under [Exemption] 3."  Cornish F. Hitchcock, 2 Guidebook to the Freedom of Information and Privacy Acts, Appendix L (2019).

In sum, FOIA now requires that an agency "release a record — even if it falls within a FOIA exemption — if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Investigative Reporting*, 436 F. Supp. 3d at 106, quoting *Judicial Watch, Inc. v. U.S. Dep't of Justice* ("*Judicial Watch II*"), No. 17-cv-0832 (CKK), 2019 WL 4644029, at *3 (D.D.C. Sept. 24, 2019) (internal quotation mark omitted).

Consistent with Congress's concern about agencies' over-withholding pursuant

to Exemption 5, most of the decisions that have addressed the foreseeable-harm requirement have done so when considering the Exemption 5 deliberative-process privilege.  Three key principles may be gleaned from those decisions, which though non-binding, are persuasive as guiding application of the foreseeable-harm requirement.  *Investigative Reporting*, 436 F. Supp. 3d at 106.

First and foremost, the foreseeable-harm requirement "impose[s] an independent and meaningful burden on agencies."  *NRDC v. EPA,* No. 17-CV-5928 (JMF), 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019); *see also, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) (describing the new foreseeable-harm requirement as a "heightened standard").  Indeed, as the foregoing legislative history illustrates, the text, history, and purpose of the FOIA Improvement Act confirm that the foreseeable-harm requirement was intended to restrict agencies' discretion in withholding documents under FOIA.  *See Stone v. INS,* 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

Second, to meet this independent and meaningful burden, an agency must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials" and "connect[ ] the harms in [a] meaningful way to the information withheld." *Judicial Watch II,* 2019 WL 4644029, at *5; *see* H.R. Rep. No. 114-391, at 9 ("An inquiry into whether an agency has reasonably foreseen a specific, identifiable harm that would be caused by a disclosure would require the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained

in the material withheld.").

Third and finally, agencies "may take a categorical approach" and "group together like records," *Rosenberg*, 342 F. Supp. 3d at 78, but when using a categorical approach, an agency must provide more than "nearly identical boilerplate statements" and "generic and nebulous articulations of harm," *Judicial Watch II*, 2019 WL 4644029, at *4-5.

The IRS withheld 10 pages in part and 57 pages in full under FOIA Exemption 5 in conjunction with the deliberative process privilege.  The information withheld in part is located on pages 1, 13-14, 65-66, 68-69, 72-74, and the pages being withheld in full are pages 16-23, 25-32, 43-50, 52-58, 77-85, 87-95, and 97-104.  Keaton Decl. ¶ 6 at p. 10-11 (DE 27-5); DE 41 (under seal).  Scott argues that these records are neither predecisional nor deliberative, and further argues that the IRS has failed to demonstrate it will suffer a foreseeable harm if the records are released.  DE 36 at 17-26.  The IRS disagrees on all counts.

**Predecisional**

The IRS asserts the records at issue in this proceeding that are being withheld under FOIA Exemption 5 and the deliberative process privilege reflect the opinions and recommendations of agency personnel that precede the final issuance of the PLRs.  Keaton Decl. ¶¶ 3, 6 at p. 10.  For example, Keaton declares that pages 87-95 and 97-104 consist of a draft PLR with tracked changes and a reviewer's comments. *Id.* at 6(b).  The comments contained in these drafts "reflect proposed actions, mental impressions, analysis, opinions, advice, and recommendations with respect to a PLR." *Id.*

Scott asserts that the Service has failed to demonstrate the records are pre-decisional because it has not identified which PLR any given document pertains, and it has not identified the actual decision maker or the author and recipients of emails. "Absent such identification, it is factually impossible for this Court to determine whether any particular record was 'prepared in order to assist an agency decision maker in arriving at his decision.'"  DE 36 at 18 citing *Miccosukee Tribe*, 516 F.3d at 1263 (pre-decisional material is "prepared in order to assist an agency decision maker in arriving at his decision.")

In determining whether a document is predecisional, courts have found that an agency does not necessarily have to point to a specific agency final decision.  *Sears, Roebuck & Co.*, 421 U.S. at 151 n.18 ("Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared"); *Moye v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1280 (11th Cir. 2004) (same).  Rather, the burden is on the agency to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process."  *Gold Anti-Trust Action Committee, Inc. v. Board of Governors of Federal Reserve System*, 762 F. Supp. 2d 123, 135 (D.D.C. 2011) quoting *Coastal States*, 617 F.2d at 868.

Scott identifies no authority that indicates an agency must identify the decision maker in order to assert FOIA Exemption 5 in connection with the deliberative process privilege, and there does not appear to be any.  Rather, as explained above, the only inquiry is whether the deliberative process was involved, and not the specific

individuals who were involved in that process.  *See Moye*, 376 F.3d at 1280 (finding

the district court erred "in focusing exclusively upon whether the final decision-maker

viewed the requested material rather than viewing the entire [decision making]

process as a whole").

　　　Moreover, the Eleventh Circuit has determined that an agency need not

specifically identify the author and recipients of emails.  *Miccosuke Tribe*, 516 F.3d at

1259.  In *Miccosuke Tribe of Indians,* the FOIA requester sought to compel the agency

to describe for each email, "its author and recipient, and the e-mail contents

withheld."  516 F.3d at 1259.  The Eleventh Circuit held that requiring the agency to

describe such information would impose "a burden of factual specificity that is not

only *not part* of this Circuit's precedent, but that is *not even mandatory* according to

other courts."  *Id.* at 1260 (emphasis in the original).  The Eleventh Circuit found that

the agency's descriptions were sufficient even where the agency's descriptions of the

withheld records merely referred to agency "staff," and did not include the author

and recipient.  *Id*

　　　Scott also asserts that because various decisions with respect to the PLR were

reached long before the final PLR was released, not all of the withheld records are

predecisional.  DE 36 at 19.  Scott asserts that "it is the role of each document, not

merely its place on a time-line, that determines whether it is pre-decisional or post-

decisional."  DE 36 at 18.  In support of this argument Scott quotes *Renegotiation Bd.*

*v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184 (1975) ("*Grumman*") which

holds "both Exemption 5 and the case law which it incorporates distinguish between

predecisional memoranda prepared in order to assist an agency decisionmaker in

arriving at his decision, which are exempt from disclosure, and postdecisional memoranda setting forth the reasons for an agency decision already made, which are not."  The *Grumman* Court continues on to hold:

> Because only the full Board has the power by law to make the decision whether excessive profits exist; because both types of reports involved in this case are prepared prior to that decision and are used by the Board in its deliberations; and because the evidence utterly fails to support the conclusion that the reasoning in the reports is adopted by the Board as its reasoning, even when it agrees with the conclusion of a report, we conclude that the reports are not final opinions and do fall within Exemption 5.

*Id*. at 184-185.

If any of the withheld pages contained postdecisional memoranda, *Grumman* might be applicable.  However, they do not.  Courts have consistently held that the **only** date relevant to determining whether a record is predecisional is the date that the decision was made.  *See, e.g.*, *Abtew v. DHS*, 808 F.3d 895, 898 (D.C. Cir. 2015) ("A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates." (internal quotations and citations omitted)); *Hall & Assoc. LLC v. EPA*, 315 F. Supp. 3d 519, 534 (D.D.C. 2018) ("[T]he predecisional analysis examines *when* the agency created a given record in relation to the timing of the decision to which the record relates . . . ." (emphasis in original)); *Judicial Watch*, 20 F. Supp. 3d at 269 ("[C]ourts determine whether a document is predecisional by looking at the timing of the document's release relative to the date the decision was made.").

As explained above, the "decision" at issue here is the final issuance of the PLR.  All records being withheld either in full or in part reflect the "opinions and recommendations of agency personnel that <u>preceded</u> the final issuance of the PLR(s)**.** Keaton Decl. ¶ 6, DE 27-5; DE 41 (under seal).  Scott fails to demonstrate otherwise.

Accordingly, there can be no material dispute that the records at issue are predecisional.

**Pages Withheld in Part**

The IRS redacted information on the following 10 pages:  pages 1, 13-14, 65-66,[69] 68-69, 72-73, and 74.  Scott challenges the application of exemption 5 to some of these redactions.  Scott asserts pages 65-66 were re-released on June 5, 2020 with the entry for 3/24/14 on page 66 unredacted (except for the name of a taxpayer representative).  DE 39, Ex. 1.  Scott asserts

> [i]t can be seen that the entry was never 'deliberative,' but was the record of a telephone call with an outside party.  A communication with an outside party can never be deemed "deliberative."  The demonstrably false claim of deliberative process taints all other such claims.

DE 39 at 11.

The Court has reviewed the remaining redactions made on pages 65-66 *in camera* and finds that the withheld sections include both deliberative material and taxpayer representative information.  DE 41 (under seal).  Therefore, Scott's challenge to the redactions made on pages 65-66 is rejected.

Scott also challenges the redactions made regarding "the entry dated 4/14." The Court could not find any entry dated 4/14.  Next Scott challenges the redactions made at the top of page 68, stating it appears to be a direction to send materials to another party or office.  Scott is absolutely correct that the entry (after the first few lines which are properly redacted under Exemption 6[70]) asks the recipient to send a

---

69  The Court has already concluded that the redactions made pursuant to Exemption 3 on pages 65-66 are valid.  *See supra* at page 39.

70  Exemption 6 permits an agency to withhold "personnel and medical files and similar files the

certain submission to certain branches.  This sentence does not fall within the parameters of what case law has established as properly withheld under the deliberative process and should be released.  It does not reflect an advisory opinion, recommendation or deliberation comprising part of a process by which governmental decisions and policies are formulated.  The effect of its release would not inaccurately reflect or prematurely disclose the views of the agency, or suggest as agency position that which is as yet only a personal position.

On the other hand, the redaction at the bottom of page 68 and top of page 69 is exactly the type of advisory opinion that the deliberative process was intended to protect.  The redacted notes reflect the give-and-take of the consultive process and were properly withheld in part.  *See*, *Florida House*, 961 F.2d at 949; DE 41 (under seal).

Accordingly, Scott's objection to the one sentence redaction made pursuant to Exemption 5 near the top of page 68 is sustained and the IRS is directed to rerelease page 68 with that sentence intact.  Scott's objection to the withholding of the bottom of page 68 and the top of page 69 is denied.

Scott also challenges the redactions on pages 72-73.  Scott asserts the redactions at the top of page 72, and at the bottom of page 72 and continuing on to page 73, precede the submission date of the actual PLR request, so these pages "cannot possibly be deliberative with respect to a matter that does not even exist." DE 39 at 12-13.

---

disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

The redacted information references an attachment, which is not included, and reviews a story in <u>The Bond Buyer</u>.  The IRS allowed the following words to be viewed, "[t]he story suggests" but then redacted the writer's description of the published story.  The writer then requests "more information about these deals."  This email string does not reflect an advisory opinion, recommendation or deliberation comprising part of a process by which governmental decisions and policies are formulated.  The effect of its release would not inaccurately reflect or prematurely disclose the views of the agency, or suggest as agency position that which is as yet only a personal position.  Moreover, the IRS has not identified specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the redacted portion of the email.  Accordingly, Scott's objection to the redactions on pages 72-73 are sustained and the IRS is directed to release all information on pages 72-73 that it claimed was deliberative.  The one redaction of the name of a taxpayer representative on the first line on page 72 shall remain redacted.

Scott's last objection regarding the materials withheld in part is to the one and one-half sentence deliberative process redaction on page 74.  Scott guesses it relates to "scheduling a meeting [or] perhaps providing some factual background."  DE 39 at 13.  Having reviewed the redacted matter *in camera*, Scott has guessed incorrectly and the Court finds this information is properly redacted under the deliberative process privilege.  DE 41(under seal).

**Pages Withheld in Full**

The IRS states it withheld 57 pages in full under FOIA Exemption 5.  The information being withheld in full is located on pages 16-23, 25-32, 43-50, 52-58, 77-85, 87-95, and 97-104.  The Court has reviewed these pages *in camera* and has confirmed that these pages contain predecisional unsigned drafts of a PLR.  DE 41 (under seal).  The IRS claims these drafts were part of the decision-making process that preceded the final issues of a PLR.  Many pages contain comments within the draft which reflect proposed actions, mental impressions, analysis, opinions, advice, and recommendations with respect to a PLR. [71]  The name and other return information of a third-party taxpayer is also on some of the pages.

Scott makes a number of arguments that the whole of the withheld pages cannot qualify as predecisonal and exempt under the deliberative privilege without the Court's *in camera* review.  Since the Court has reviewed the pages *in camera*, these arguments (*e.g.*, actual decision makers, email authors and recipients are not identified) are rejected as moot.

Scott quotes *Coastal States* at 866 for the proposition that "[e]ven if the document is predecisional at the time it is prepared it can lose that status if it is adopted formally or informally as the agency position on an issue."  DE 39 at 13.  He further asserts that "only portions of the drafts that might possibly qualify for 'deliberative process' are those portions that are different from the final version.  Earlier drafts, or portions thereof, that become the final version are not exempt."  DE

---

71  The Service notes that the following pages are also at issue in Scott's parallel FOIA action: 65-66, 68-69, 72-74, 77-85, 87-95, 97-104. As set forth in the Declaration of Aaron B. Edelman and *Vaughn* index filed in the parallel FOIA action, those pages all relate to PLR-147816-13.

39 at 13.

A record can only lose its privilege if the agency "has chosen to expressly adopt it or incorporate it by reference into an otherwise final opinion." *Hawkins v. Dep't of Labor*, No. 305CV269J32TEM, 2005 WL 2063811, at *4 (M.D. Fla. Aug. 19, 2005). For example, in *National Counsel of La Raza v. U.S. Dep't of Justice*, the Second Circuit determined that an agency waived the deliberative process privilege where it publicly and repeatedly referenced the memorandum as justification for a particular policy. 411 F. 3d 350, 359 (2d Cir. 2005).

Thus, in order to succeed on this argument, Scott must point to specific information that was adopted or incorporated by reference into the final PLR. *See id.* at 359 ("[T]here must be evidence that an agency has *actually* adopted or incorporated by reference the document at issue; mere speculation will not suffice." (emphasis in original)); *Hawkins*, 2005 WL 2063811, at *4 ("Without clear adoption or incorporation by [the agency], the [withheld information] did not lose its privilege.").

There is no evidence that the IRS has expressly adopted the withheld information by reference into the final PLR. Scott merely speculates that unidentified parts of the drafts and comments included in those drafts have been incorporated into the final draft of the PLR. This speculation is insufficient to show that the IRS expressly adopted or incorporated the drafts by reference. *See Nat. Counsel of La Raza*, 411 F. 3d at 359.

Scott's final argument is that the records are not deliberative because the IRS has "no discretion in the PLR process to ignore any applicable but inconvenient IRS provision or regulation. Failure to consider a relevant fact, statute or [r]egulation is

an error, not an editorial judgment." DE 36 at 20. It appears that Scott wants to inspect draft PLRs so that he can decide whether the IRS has done its job correctly. Scott cites no precedent for such access, and the Court rejects this approach to evaluating the deliberative process privilege.

The deliberative process privilege was "designed both to minimize public confusion about agency rationales and actions and to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Broward Bulldog*, 939 F.3d at 1194. In this way, the deliberative process privilege "encourages open, frank discussions, protects against premature disclosure of proposed policies, and prevents the disclosure of reasons and rationales, which are not ultimately the grounds for the agency's actions." *Florida Immigrant Advocacy Center v. U.S. Dep't of State*, Case No. 09-CV-22689, 2010 WL 11601021, at *4 (S.D. Fla. Apr. 8, 2010). Doing so ensures that when an agency ultimately reaches a decision, such a decision fully comports with all relevant laws, rules, and regulations.

Here, the withheld records reflect the opinions, recommendations, proposed actions, mental impressions, and recommendations of IRS and Chief Counsel employees. Keaton Decl. ¶¶ 32-33, DE 27-5. Further, these records discuss or propose options for reaching the proper legal determination or provide suggested revisions, legal analysis, or other comments on the PLRs. *Id.* ¶ 33. As such, these records reflect the exact type of "give-and-take" that the deliberative process privilege was intended to protect. Accordingly, the Court concludes the pages withheld in full are predecisional and deliberative. DE 41 (under seal).

As to its burden to identify specific harms to the relevant protected interests that the IRS can reasonably foresee would actually ensue from disclosure of the withheld materials, the IRS simply states that

> disclosing the deliberative records would result in disclosing the Service's pre-decisional selections of groups of facts, reasons, and rationales that were not the ultimate ground for agency action. (IRS Stmt. ¶ 76.)  Further, the release of the withheld records would threaten to weaken the quality of internal, pre-decisional deliberations in the future if there were the expectation that such deliberations would be disclosed. (*Id.*)

DE 27-2 at 20, Keaton Decl. ¶ 5 (DE 27-5, page 10 of 13).

Scott challenges this explanation asserting it is "facially false."  DE 36 at 24.  As evidence that the IRS is allegedly over withholding and cannot be trusted, Scott brings to the Court's attention the handwritten entry for 3/24/14 on page 66.  On September 12, 2019, the IRS released page 66 to Scott but redacted the handwritten entry for 3/24/14 under the deliberative process privilege.  DE 36 at 24.  Scott points out that Keaton declared "that he was familiar with the requirements for disclosure, that he had reviewed the records at issue and that the matters set forth in the declaration were correct and true, under penalty of perjury."  *Id.*  However, a few days earlier, the entry dated 3/24/14 on page 66 was released in full in response to an unrelated § 6110 request.  *Id.*  The IRS acknowledges that it made an official and documented disclosure as to the 3/24/14 entry on page 66, and as a result, it may no longer claim a FOIA exemption as to that portion of the record.  Accordingly, the IRS has re-released that page to Scott in this FOIA action with the 3/24/14 entry unredacted.

The Court is aware that some of the redactions seem unusually overbroad and that is why the Court ordered the redacted and withheld pages to be produced under

seal.  The Court has carefully reviewed these materials and finds that Keaton descriptions are sufficient to demonstrate a foreseeable harm.  *See, e.g.*, *Rosenberg*, 2020 WL 1065552, at *13 (finding that the agency met the foreseeable harm standard for records containing opinions and discussing possible changes to policies where the agency explained disclosure would harm its decision-making because officials would be less open to discussing their views, opinions, and recommendations).  Accordingly, the foreseeable harm standard has been satisfied.

Furthermore, the Court finds IRS's simultaneous redaction and disclosure of information on page 66 does not illustrate bad faith.  *See Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981) (explaining that if courts were to make an inference of bad faith when an agency reviews its position, it would "work mischief in the future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld.").  While the IRS may not have performed its duties under FOIA perfectly in this instance, error-free performance is not required.  The particular lapses in the IRS's production of Scott's requested records do not rise to the level of rebutting the presumption of good faith that attaches to statements made by agency officials under penalty of perjury. *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 108-09 (D.D.C. 2010) (explaining that error-free performance is not required).

## Conclusion

For the reasons elaborated upon above, it is hereby

**ORDERED AND ADJUDGED** that the Internal Revenue Service's Motion for Summary Judgment [DE 27] is granted in part and denied in part, and Plaintiff's Cross-

Motion for Summary Judgment [DE 36] is granted in part and denied in part.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 26th day of January, 2021.

_____
KENNETH A. MARRA
United States District Judge