UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-81750-MARRA/MATTHEWMAN

JAMES E. SCOTT,

    Plaintiff, *pro se*,

vs.

INTERNAL REVENUE SERVICE,

    Defendant.
_____/

## ORDER AND OPINION ON MOTION FOR COSTS

THIS CAUSE is before the Court upon Plaintiff's Motion for Costs [DE 45]. The Court has carefully considered the motion, the amended response, reply and is otherwise fully advised in the premises.

Plaintiff, James E. Scott ("Scott"), moves for an award of costs pursuant to 5 U.S.C. § 552(a)(4)(E)(ii) in the amount of $751.89.[1] Defendant, Internal Revenue Service ("IRS"), opposes the motion. The parties agree regarding the law that applies to Scott's request, but disagree whether Scott has met the requirement to be "entitled" to costs.

**Legal Standard**

Courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" in any FOIA case where "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). For Scott to recover his costs in this case, he must be both (1) eligible for and (2) entitled to such an award. *See*

---

[1] Because Scott represented himself in this case, he is not seeking attorney's fees.

*Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011) ("*Brayton*"). A plaintiff can become eligible for an award in one of two ways: either by obtaining relief through a judicial order or by showing that his suit caused "a voluntary or unilateral change in position by the agency," resulting in the release of documents. 5 U.S.C. § 552(a)(4)(E)(ii); *see also Brayton*, 641 F.3d at 525 ("[T]he OPEN Government Act of 2007 ... revived the possibility of FOIA fee awards in the absence of a court decree.").

If the plaintiff is eligible for a fee award, courts proceed to the entitlement prong. *Electronic Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.* ("*EPIC I*"), 999 F. Supp. 2d 61, 66-67 (D.D.C. 2013) (quoting *Brayton*, 641 F.3d at 524). Under the entitlement prong, courts consider "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013); *Dorsen v. S.E.C.*, 15 F. Supp. 3d 112, 120 (D.D.C. 2014) ("*Dorsen*") (quoting *Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C. Cir. 1995)). "In applying this test, '[n]o one factor is dispositive.'" *EPIC I*, 999 F. Supp. 2d at 67 (quoting *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) ("*Davy*"). The sifting of those criteria over the facts of a case is a matter of district court discretion. *See Church of Scientology v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981).

"Moreover, courts have explained that the various factors are merely tools to aid in the pursuit of the two separate and distinct overriding objectives of the FOIA: to encourage FOIA suits that benefit the public interest, and to compensate for enduring an agency's unreasonable obduracy in refusing to comply with the FOIA

requirements." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 202 (D.D.C. 2016) (internal quotation marks omitted). "Thus, the touchstone is always whether an award of [costs] is necessary to implement the FOIA." *Id.* at 202–03 (internal quotation marks omitted).

Finally, if a FOIA plaintiff is both eligible for and entitled to an award, courts assess the reasonableness of the requested fees. While precedent can be a helpful guide to a court in conducting its assessment, this analysis is "necessarily somewhat imprecise." *National Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1323 (D.C. Cir. 1982). Thus, courts should "exercise their discretion as conscientiously as possible, and state their reasons as clearly as possible." *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980) (*en banc*).

## Analysis

The IRS acknowledges that Scott is eligible for costs since the Court ordered it to turn over a number of records.[2] DE 51-1 at 3. *See, e.g., Maydak v. D.O.J.*, 579 F. Supp. 2d 105, 108 (D.D.C. 2008) (explaining that even if the agency is compelled to release a "*de minimis* volume of records," the fact the agency was compelled makes the plaintiff eligible for attorneys' fees and costs); *Judicial Watch, Inc. v. F.B.I.*, 522 F.3d 364, 367–68 (D.C. Cir. 2008) ("A FOIA plaintiff substantially prevails when awarded some relief on the merits of [his] claim . . . " (internal quotation omitted)). The question then turns to whether Scott is entitled to costs.

---

[2] The Court determined that the IRS had improperly withheld one sentence on the top of page 68, two paragraphs spanning pages 72-73, and pages 8-12, 15, 24, 33, 34, 42, 51 and 59-64 in part. DE 42 at 42 54, 55.

The IRS asserts Scott is not entitled to costs because there is little public benefit derived from this case, its withholdings were reasonable, and Scott had a commercial and a private interest in the records he requested. DE 51-1 at 4, 7, 10. When evaluating the reasonableness of an agency's withholdings, courts consider "whether the agency's opposition to disclosure had a reasonable basis in law, and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Dorsen*, 15 F. Supp. 3d at 123 (citing *McKinley v. Federal Housing Finance Agency*, 739 F.3d 707, 712 (D.C. Cir. 2014)).

**Public Benefit**

When determining the public benefit envisioned by Congress in enacting the FOIA, a court "evaluate[s] the specific documents at issue in the case at hand" and determines whether the plaintiff's lawsuit "is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman,* 63 F.3d 1115, 1120 (D.C. Cir. 1995) ("*Cotton*"); *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir.1978) ("*Blue*"); *Electronic Privacy Info. Center v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 234 (D.D.C. 2011). "The test … is whether the disclosure will assist the citizenry generally in making an informed judgment as to governmental operations." *Aviation Data Service v. F.A.A.*, 687 F.2d 1319, 1323 (10th Cir. 1982).

Under the public benefit criterion, "a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication." *Solone v. I.R.S.*, 830 F.Supp. 1141, 1143 (N.D. Ill. 1993) (citing "Senate Report at 19"). "FOIA was enacted to provide information to the public, . . . not to benefit private litigants." *Id*. Generally, courts are disinclined to award fees and costs under

FOIA where the benefit to the public is minimal, incidental or speculative. *Whalen v. I.R.S.*, Case No. 92 C 4841, 1993 WL 532506, at *5 (N.D. Ill. Dec. 20, 1993).

*It has been held that when determining the public benefit, a court must assess "the potential public value" of the information sought, and not the "public value of the information received." Morley v. Central Intelligence Agency*, 810 F.3d 841, 844 (D.C. Cir. 2016) ("*Morley I*") (stating that the "public-benefit factor requires an *ex ante*[3] assessment of the potential public value of the information requested . . .") (emphasis added). The Court of Appeals reasoned that "shifting to the plaintiff the risk that the disclosures would be unilluminating" would defeat the purpose of FOIA's fee-shifting scheme. *Id*. "*To have 'potential public value,' the request must have at least a modest probability of generating useful new information about a matter of public concern.*" *Id*. (internal citations omitted) (emphasis added).

A classic discussion of the public benefit in FOIA cases is in *Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir. 1978) where the Court stated:

> With respect to the first of these considerations - "the benefit to the public deriving from the case" - it is doubtless true, as the D.C. Circuit has suggested, that the successful FOIA plaintiff always acts in some degree for the benefit of the public, both by bringing government into compliance with the FOIA disclosure policy and by securing for the public at large "the benefits assumed to flow from the public disclosure of government information." [*Aviation Data Service v. F.A.A.*, 687 F.2d 1319, 1323 (10th Cir. 1982).] Yet the Senate Report's discussion of this criterion referred repeatedly to disclosure to the press and to public interest organizations, thus strongly suggesting that in weighing this factor a court should take into account *the degree of dissemination and likely public impact that might be expected from a particular disclosure*. S. Rep. No. 854, 93d Cong., 2d Sess. 19 (1974). This goes to the central purpose of the disclosure act: to assist our citizenry in making the informed choices so vital to "the maintenance of a popular form of government." *Id*. at 2.

---

[3] "Based on assumption and prediction, on how things appeared beforehand, rather than in hindsight." Black's Law Dictionary 601 (8th ed. 2004).

      Thus the factor of "public benefit" does not particularly favor costs where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices.

*Blue*, 570 F.2d at 533 (emphasis added).

      Under the standard elaborated upon above, there is no apparent public benefit in the disclosure of documents pursuant to Scott's FOIA request for certain records within the IRS Office of Chief Counsel ("OCC"). The request listed three specific categories of records: (a) Any OCC Code and Subject Matter Directory in effect between 8/1/2013 and 11/19/2013; (b) Emails between any of: Timothy L. Jones, Helen M. Hubbard, and/or Lewis Bell regarding a pre-submission conference of any Private Letter Ruling request, between 6/1/2013 and 11/18/2013; and (c) Files regarding PLR 201502008: CASE MIS information, including all subsystems (e.g., TECHMIS); Form 9718, Case History; Check sheet for Processing Private Letter Rulings; Form 9818, Case Processing; Bibliography; Any Requests for Assistance; Any responses to Requests for Assistance; and Any communications with other areas of the IRS.

      Scott claims the following significant public benefits have been generated by his efforts:

(1) "*the documents obtained* "substantiate allegations of malfeasance in the proper administration of the tax code by 'senior IRS officials' as that term is defined in the Operations Manual ("OM") of the Treasury Inspector General for Tax Administration ("TIGTA"). OM § 340.2.1." DE 45 at 6 (emphasis added). "Causing malfeasance to be investigated and substantiated, and bringing that to the attention of Congress, certainly aids in making a vital political choice." DE 45 at 6 (emphasis added).

(2) "The admission by [the IRS] that PLR files do not necessarily contain all communications pertaining to the PLR from all employees," (DE 27-5 ¶ 11) *affects all future FOIA requests for these types of records, as well as requests under § 6110*, and the reasonableness of any search that does not extend beyond the case file itself. The initial search by Disclosure and Litigation Support Branch in this case was

admittedly deficient. Plaintiff has already taken steps to communicate this admission to various not-for-profit organizations (The FOIA Project, Tax Analysts) involved in FOIA cases generally, as well as one specifically targeted at records likely to be under the domain of OCC. DE 48 at 2 (emphasis added).

(3) "Courts have also found a public benefit outweighing any private interest by establishing *a pattern and practice* of an agency not complying with FOIA. Here, the rebutting the over-reaching claim of (b)(3) due to § 6103 is especially important, as that is arguably the most difficult exclusion to overcome because perforce the records at issue are substantially unknown." DE 45 at 7 (emphasis added).

(4) *that the "additional pages voluntarily re-released* by Defendant by letter dated June 5, 2020[4] confirmed an important precedent, namely that once records have been released under § 6110 they are 'public records' now subject to FOIA." DE 48 at 2 (emphasis added)

(5) *The re-released pages on June 5, 2020 show* a contradiction between a conclusion of the OCC attorney processing the PLR request (that the Total Return Swap in the transaction at issue caused a "reissuance"), and the published PLR itself which states, "we specifically express no opinion about whether the extension of the TRS causes a reissuance under § 1001." Scott asserts this "is clear evidence of the OCC's misstatements with respect to this PLR," and that such misstatements warrant referrals to the congressional committees entrusted to oversee the IRS, and other administrative and possibly criminal referrals. DE 48 at 2 (emphasis added).

(6) *"the additional pages already released as a result of the Court's Order* shows that OCC received a written attachment from Allyson Belsome . . . on August 5, 2013, and in turn sent it to two other branches dealing with specific issues (TRS, and reissuance under § 1001) for analysis. This directly contradicts information provided by the IRS during the FOIA process for Case No. 18-81742. No responses to those requests have been included in the responsive records identified in this case." DE 48 at 3 (emphasis added).

(7) "The records at issue have clear public benefit from being publicly available, and Plaintiff has already taken actions to ensure that the information is broadly available to various not-for-profit organizations with ongoing interests in FOIA litigation, as it *may benefit that litigation*." DE 48 at 3 (emphasis added).

---

[4] The IRS wrote to Scott, "In your Sur-Reply in Case No.18-81742 and Cross-Motion for Summary Judgment in Case No.18-81750, you identified a record that had been released in more full in response to Mark Scott's request under 26 U.S.C. § 6110. Because you have demonstrated an authorized disclosure that exactly matches some of the records at issue in the FOIA proceedings, the Service has authorized me to re-release three pages in part in both pending FOIA actions." *See* DE 64, Ex. A at 4 in Case No. 18-CV-81742.

Courts have found public benefits in FOIA requests relating to matters of clear national import. *See, e.g., Morley I*, 810 F.3d at 844 (referring to the Kennedy assassination, "an event with few rivals in national trauma and in the array of passionately held conflicting explanations"); *Electronic Privacy Info. Center v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 44 (D.D.C. 2016) ("*EPIC II*") (finding a public benefit because "[o]bviously, issues of national security and privacy are of enormous public importance"); *American Imm. Council v. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 406 (D.D.C. 2015) (finding FOIA request about immigration policy was "a matter of undeniable public import" because immigration policy "has long been at the forefront of the national conversation").

This case is substantially different from the FOIA cases set forth above in which courts have found public benefits. Here, Scott's FOIA request generally sought correspondences originated by certain IRS employees regarding private letter ruling requests. DE 42, ¶ 2. Scott fails to show that these topics will assist the citizenry in making an informed judgment as to governmental operations or that they rise to the level of national import as do the FOIA requests in the cases set forth above. *See American Imm. Council,* 82 F. Supp. 3d at 406.

Moreover, as the italicized portions of Scott's claimed public benefits demonstrate, all of Scott's examples rely on the potential public value of the information *received*, rather than the potential public value of the information *sought*. As discussed above, when considering the public benefit, courts are to consider only the FOIA request itself, and not the information that may or may not have been received. *See Morley I,* 810 F.3d at 844; *Siegelman v. D.O.J.*, Case No.

2:16-CV-83, 2019 WL 1513979, at *5 (N.D. Al. Apr. 8, 2019).  In a FOIA action, where the plaintiff seeks disclosure of material for commercial purposes,[5] attorney fees may be awarded only on a positive and clear showing of substantial public benefit.  Minimal, incidental and speculative public benefit will not suffice.  In this instance, the public benefit, if any, is *de minimis*.  *Lovell v. Alderete*, 630 F.2d 428, 433 (5th Cir. 1980).

Scott's asserted public benefits deal with (1) the information he may or may not have received as a result of the FOIA request, and (2) exposing the IRS's improper handling of his FOIA requests generally.  Because neither of these asserted public benefits have to do with "the potential value of the information sought," they are not relevant to the public benefit analysis.  Even if this were not the case, Scott's asserted public benefits would still fail.  For example, the first asserted public benefit – "[b]ringing to light malfeasance" – is based on conjecture that "malfeasance" occurred in the first place.  Scott fails to identify what "malfeasance" he is referring to, and fails to produce any evidence of "malfeasance."

Further, the second asserted public benefit – establishing a pattern and practice of an agency not complying with FOIA – makes no sense.  This is a single case where the Court determined that the IRS performed an adequate search, but had improperly withheld one sentence on the top of page 68, two paragraphs spanning pages 72-73, and pages 8-12, 15, 24, 33, 34, 42, 51 and 59-64 in part.  It is pure unsubstantiated conjecture that this case demonstrates a pattern or practice of noncompliance.

---

[5] *See infra*.

Scott's assertion that the re-released pages he received show misstatements with respect to the final PLR is unpersuasive. It appears Scott received a page that was generated while the agency was deliberating. Ultimately, however, the agency came to a different final conclusion. Naturally, the IRS is entitled to deliberate during the process of making a final decision and alter its opinions along the way. Thus, it cannot be said that a misstatement was made under these circumstances. Considering all of the above, the public benefit factor weighs against an award of costs.

**Commercial and Private Interest**

Factors two and three – the commercial benefit to the FOIA plaintiff and the plaintiff's interest in the requested information – are often "combined . . . into a single factor." *McKinley v. Fed. Housing Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014). These factors assess "whether a plaintiff has sufficient private incentive to seek disclosure of the document without expecting to be compensated for it." *Id*. This is because "Congress enacted FOIA to provide information to the public, not to benefit private litigants, so, where a party is motivated by self-interest or seeks to advance [his] private commercial interests, an award of [costs] is generally inappropriate." *Spivey Util. Constr. Co. v. Occupational Safety & Health Admin.*, No. 8:16-CV-3123, 2018 WL 4212005, at *7 (M.D. Fla. Aug. 14, 2018), report & rec. adopted sub nom., 2018 WL 4207997 (M.D. Fla. Sept. 4, 2018) ("*Spivey*").

Where a plaintiff uses a FOIA litigation to aid in discovery, there is "clearly a personal benefit or gain accruing solely to the individual." *Spivey,* 2018 WL 4212005, at *7. Thus, courts "have routinely found that the use of FOIA as a substitute for

discovery constitutes a private, non-compensable interest." *Ellis v. United States*, 941 F. Supp. 1068, 1079 (D. Utah 1996); *see also Maryland Dep't of Human Res. v. Sullivan*, 738 F. Supp. 555, 563 (D.D.C. 1990) ("This district has found that the use of FOIA as a substitute for civil discovery is not proper and should not be encouraged by a fees and costs award."); *Muffoletto v. Sessions*, 760 F. Supp. 268, 275-76 (E.D. N.Y. 1991) (same).[6]

Scott asserts that he has used documents previously obtained through FOIA requests to substantiate allegations of malfeasance in the proper administration of the tax code by senior IRS officials and that "[a]cquiring information that substantiates allegations of administrative misconduct is not . . . connected to litigation that benefits Plaintiff." DE 45 at 6; DE 48 at 3. He asserts that his interest

---

[6] The IRS claims, "[i]t is a fair inference that plaintiff James Scott seeks to use information obtained through this suit in aid of a whistleblower case brought by a person represented by his counsel in other matters, Mark Scott. In certain circumstances, the Internal Revenue Code authorizes monetary awards to whistleblowers who provide information about violations of the internal revenue laws. *See* 26 U.S.C. § 7623(b). Specifically, under § 7623, if a whistleblower supplies the Secretary of the Treasury with information related to 'persons guilty of violating the internal revenue laws or conniving at the same,' and the Secretary uses that information to institute an administrative or judicial action, the whistleblower shall 'receive as an award at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action . . . .' 26 U.S.C. § 7623. [A certain] news article . . . indicates that the whistleblower Mark Scott represented could have received a monetary award, and reveals that Mark Scott stated his 'whistleblower case could involve billions of dollars.' (citation omitted). With this context, it becomes clear that Scott, and/or Mark Scott, likely have a personal interest in the requested information. Specifically, it appears Scott is using the FOIA as a discovery tool to uncover information that would be helpful for Mark Scott's whistleblower case. Such a use of the FOIA as a discovery tool provides 'clearly a personal benefit or gain.' *Spivey*, 2018 WL 4212005, at *7." DE 51-1 at 8-9.

Scott responds with a Declaration from Mark Scott that states, "to the best of my knowledge and belief, and based in large part on information received directly from the Internal Revenue Service, there are no open and active investigations at the Internal Revenue Service with respect to any whistleblower referral relating to this 2014 private letter ruling. [DE 48,] Ex. A, ¶ 4. . . While making the allegation of 'personal benefit or gain' due to speculation of a potential future whistleblower award Defendant fails to acknowledge that if any such an award occurred then the public benefit would also increase substantially, by far more than any personal gain to any private party. As any whistleblower award is only paid from recovered proceeds, and all such awards are fully taxed, then the net public benefit would range from about 11 times greater than the net award (at 15% award and 39.6% tax rate) to about 4.5 times the net award (at 30% award)." DE 48 at 5-6.

in the records extends to acquiring records that FOIA mandates to be made available and using such records to substantiate allegations of maladministration of the tax code. DE 45 at 6.

Other than Scott's unsubstantiated statements, there is nothing in this case that shows that the information Scott requested was motivated to benefit the public. Having reviewed the requests themselves and all the documents withheld *in camera*, the Court cannot discern any basis to conclude that the requests were submitted to advance a public benefit. This being said, the only reasonable conclusion that can be made is that this litigation was motivated by a commercial or private interest. Accordingly, these factors do not weigh in favor of awarding costs.

**Reasonableness of the Agency's Withholding**

The final factor in determining a plaintiff's entitlement to costs[7] under FOIA is the reasonableness of the agency's withholdings. *EPIC II*, 218 F. Supp. 3d at 45. "[A]lthough ... no particular factor should be given disproportionate weight, in some circumstances the final factor may be dispositive." *Dorsen*, 15 F. Supp. 3d at 121. This fourth factor is meant to "incentiviz[e] the government to promptly turn over - before litigation is required - any documents that it ought not withhold." *Davy*, 550 F.3d at 1166. To determine the reasonableness of the agency's withholding, the Court considers two factors.

The first factor is whether the agency's opposition to disclosure "had a reasonable basis in law." *Davy*, 550 F.3d at 1162 (citations omitted). "If the

---

[7] Most, if not all, cases address the issue of *attorney's fees* and costs. This case is unusual where the Plaintiff seeks only costs, which amount requested pales in comparison to the magnitude of work conducted by this *pro se* litigant.

Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable legal basis in law that will be weighed along with other relevant considerations in the entitlement calculus." *Id*. The second factor is whether the agency was "'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Id*. (quoting *LaSalle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481, 486 (D.C. Cir. 1980)).

Under either factor, the agency carries the burden of showing it behaved reasonably. *Davy*, 550 F.3d at 1163. "The question is not whether [the Plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the Plaintiff] filed suit." *Id*. This fourth and last criterion "suggests that attorneys' fees would be favored if an agency's nondisclosure was designed to avoid embarrassment or thwart the requester." *Blue*, 570 F.2d at 534.

Reasonableness of Withholdings

Some of the IRS's withholdings were found to be unreasonable. The Court determined that the IRS had improperly withheld one sentence on the top of page 68, two paragraphs spanning pages 72-73, and pages 8-12, 15, 24, 33, 34, 42, 51 and 59-64 in part. DE 42 at 42 54, 55. In addition, the IRS reversed itself when it came to some claims of exemption.

For instance, the IRS withheld a document in full and parts of a few other pages that had already been released in response to a request under § 6110.[8] DE 36,

---

[8] Page 15 in full and pages 141, 147, 151, 467, 473, and 477 in part. *See e.g.*, Case No. 18-cv-81742, DE 64-1.

¶ 86. After Scott raised this fact in his submissions, the IRS rereleased the page which should have been released initially. DE 48 at 8; DE 42, ¶ 83. In another instance, the IRS released page 66 to Scott but redacted the handwritten entry for 3/24/14 under the deliberative process privilege. However, a few days earlier, the entry dated 3/24/14 on page 66 was released in full in response to a § 6110 request. The IRS acknowledged that it made an official and documented disclosure as to the 3/24/14 entry on page 66, and as a result, it could no longer claim a FOIA exemption as to that portion of the record. Accordingly, the IRS re-released that page to Scott with the 3/24/14 entry unredacted. DE 42 at 59.

As far as the few pages that the IRS both withheld or redacted in this case and also disclosed in response to § 6110 requests, the Court found in its Order and Opinion that the redactions in this case were not done in bad faith. DE 45 at 60 citing *Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981) (explaining that if courts were to make an inference of bad faith when an agency reviews its position, it would "work mischief in the future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld."). While the IRS may not have performed its duties under FOIA perfectly in this instance, error-free performance is not required. The particular lapses in the IRS's production of Scott's requested records do not rise to the level of rebutting the presumption of good faith that attaches to statements made by agency officials under penalty of perjury. *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 108-09 (D.D.C. 2010) (explaining that error-free performance is not required). As far as the pages improperly withheld, there is no evidence that the IRS withheld those pages to prevent

embarrassment or to thwart Scott. *Blue*, 570 F.2d at 534 (fees would be favored if an agency's nondisclosure was designed to avoid embarrassment or thwart the requester).

As far as the pages the Court determined were improperly withheld (pages 8-12, 15, 24, 33, 34, 42, 51 and 59-64), the IRS asserts that its withholdings had a reasonable basis in law because it prevailed on its claims of exemption for a significant portion of the records withheld. DE 51-1 at 11. In this case the IRS withheld 91 pages in full and 12 pages in part. DE 42, ¶ 61. Of these 103 pages, the Court determined that less than 20 percent were improperly withheld. DE 42 at 42, 54-55.

For the proposition that its withholdings had a reasonable basis in law because it prevailed on its claims of exemption for more than 80 percent of the records, the IRS relies on *Chamberlain v. Alexander*, Case No. 7742-73, 1976 WL 1110, at *2 (S.D. Ala. Aug. 23, 1976) ("the fact the Government prevailed in their claim of nondisclosure on 150 of the 200 documents indicates the assertion of non-disclosure had 'a reasonable basis in law.'") and *People for the Ethical Treatment of Animals v. U.S. Dep't of Agriculture*, Case No. 03-CV-195, 2006 WL 508332, at *5 (D.D.C. Mar. 3, 2006) ("[b]ecause USDA prevailed on the majority of its claims, its overall position was reasonable."). These two cases, however, are clearly outliers.

In *EPIC II*, 218 F. Supp. 3d at 46, the Government argued that it was "correct as a matter of law" because the Court granted in part the agency's Motion for Summary Judgment. The *EPIC II* Court found this argument to be squarely foreclosed by *Davy*. *Id*. In *Davy*, just as in *EPIC II*, the agency failed to respond substantively to a FOIA

request, was subsequently sued and then ordered to produce responsive documents. *Davy*, 550 F.3d at 1158. In both cases, the agency completed court-ordered production and then moved for summary judgment, arguing that the scope of its search was sufficient, and it prevailed. *Id*. Despite the fact that the Government prevailed at summary judgment, the Court of Appeals still held that the plaintiff was entitled to attorneys' fees. *Id*. at 1163. "If the government could defeat an award of fees by citing a lack of resistance after the requester files a lawsuit to obtain requested documents, then it could force plaintiffs to bear the costs of litigation." *Id*. Consequently, the IRS's argument that Scott is ineligible for costs simply because it prevailed on more than 80 percent of the pages it withheld or partially withheld is rejected.

The IRS has the burden of justifying its withholding of a document under a FOIA exemption. *EPIC II*, 218 F. Supp. 3d at 34 citing *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). To enable the Court to determine whether the agency has met its burden, the Court may require the agency to submit a "Vaughn Index" consisting of affidavits or declarations that "identify the reasons why a particular exemption is relevant and correlate those claims with the particular part of a withheld document to which they apply." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *see also Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975).

Obdurate Behavior?

Looking back at the history of this FOIA action, it is not surprising this case ended up in court. This case began with a very long delay in processing Scott's FOIA request and providing him a response. By letter dated May 22, 2018, Scott initiated a FOIA request for certain records. DE 1 at 6. The IRS determined that 104 pages were responsive to Scott's FOIA request. It was not until almost 15 months[9] later when on September 12, 2019, one page was released in full, 12 pages were released in part, and 91 pages were withheld in full. Third Declaration of Andrew Keaton, DE 27-5, ¶ 20.

As to actual production, FOIA requires that the agency make the records "promptly available," which depending on the circumstances typically would mean within days or a few weeks of a "determination," not months or years. *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013) citing 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i). So, within 20 working days (or 30 working days in "unusual circumstances"), an agency must process a FOIA request and make a "determination." *Id*. At that point, the agency may still need some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce. *Id*. If the agency does not adhere to FOIA's explicit timelines, the "penalty" is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court. *Id*. at 189-90.

---

[9] One month credit to the IRS when the government was partially shut down from 12/21/18 – 1/25/19. DE 42, ¶¶ 35, 37.

As the "the ultimate arbiter" of whether the IRS had provided an adequate factual basis to support its claims of exemption, the Court concluded that it needed to look behind Keaton's Declaration and conduct an *in camera* review of the documents at issue. Accordingly, the Court ordered the IRS to file the unredacted withheld pages to which it was claiming privilege under seal. DE 40. After the *in camera* review, the Court found several instances where the asserted exemptions clearly did not apply. The Court determined that the IRS had improperly withheld one sentence on the top of page 68, two paragraphs spanning pages 72-73, and pages 8-12, 15, 24, 33, 34, 42, 51 and 59-64 in part. DE 42 at 42 54, 55. The relevant question then "is not whether the agency's legal and factual positions were correct," but rather whether they "were reasonable." *Morley v. C.I.A.*, 894 F.3d 389, 393 (D.C. Cir. 2018).

The IRS opposed the Court's decision by filing a Motion for Reconsideration, which motion was addressed and denied in its entirety. DE 50. The IRS's position seemed unreasonable given the content of the pages that were determined to be improperly withheld. Nevertheless, while the Court finds the IRS's withholding of certain pages to have been unreasonable, when considering the four factors discussed above, the Court finds that any recalcitrance by the IRS does not outweigh the lack of support for the other factors that must be established to warrant an award of costs. Accordingly, the Court, in its discretion, finds that the Motion for Costs should be denied. *Conservation Force v. Jewell,* 160 F. Supp. 3d 194, 202-03 (D.D.C. 2016). Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Costs [DE 45] is denied.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of July, 2021.

KENNETH A. MARRA
United States District Judge